David Pepper, James Biddle Leonard and Henry K. Kelly, Appellants, *v.* City of Philadelphia, Charles F. Warwick, Mayor of said City, and John M. Walton, Controller of said City.

[Marked to be reported.]

*Municipalities—Municipal debt—Increase of—Constitutional law—Constitution of 1874, art. 9, sec. 8.*

The provision of section 8, article 9 of the constitution which permitted a city whose debt at the time of the adoption of the constitution exceeded seven per cent of the assessment to increase the debt three per cent was of a temporary character; and if a city whose indebtedness then exceeded the seven per cent limit subsequently reduced its debt below that limit, it at once passed into the category of all the other cities of the commonwealth, and thereafter could only create or increase indebtedness in the same manner that they could.

The increase of two per cent authorized to be made by the second clause of section 8, article 9 of the constitution may not be transcended except by a popular vote, and this is the case, whether the increase has been made by successive additions, each less than two per cent, or at one time, and by one municipal act alone.

Argued May 20, 1897, and May 21, 1897.   Appeal, No. 212, Jan. T., 1897, by plaintiffs, from decree of C. P. No. 1, Phila. Co., Dec. T., 1896, No. 873, sustaining demurrer to bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ., on May 20, and STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ., on May 21.   Reversed. MITCHELL, J., dissents.

Bill in equity to restrain the issue of municipal bonds.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing plaintiff's bill.

*William Findlay Brown*, for appellants.—The learned court below erred, first, in determining that the amount of debt owed in 1874 was fixed as a minimum limit of indebtedness ; second, that the city of Philadelphia is still subject to the proviso in view of the fact that its debt since 1886 has been below seven per centum of its assessed valuation.

The word " debt " has been defined by this court to be a " sum of money due by express agreement," so that, combining these two meanings, you have the words in their common, ordinary sense and meaning, " a sum of money due by express agreement, other than the former or the old, not the same as before."   If the contention of the appellees, however, is correct, the loans in controversy are not new and freshly made, other than the old, but are an actual part of the old debt itself.   Nowhere, either in the debates of the convention or in the plain reading of this section itself, is it directly or even by reasonable inference declared that the new debt referred to was either to be a restoration of that portion of the old debt paid off ' or a sum of money directly added to the fixed amount of debt owed in 1874, but simply a new sum of money borrowed for new purposes.

The contention of the defendants presents a view entirely opposite and contrary to the views of the convention in that, a debt equaling the debt of 1874, or in excess of seven per centum (plus two per centum of its assessed valuation), is always fixed as the limit of the debt of the city of Philadelphia: Wilkes-Barre's App., 109 Pa. 554.

When the city of Philadelphia has created new debts in the aggregate equaling two per centum of its assessed valuation, deducting therefrom such portions of the new debt as may be in the sinking fund, it has exhausted all power vested in it by the constitution and the laws in pursuance thereof to create any further loans.

*John G. Johnson* and *James Alcorn*, with them *John L. Kinsey*, for appellees.—The constitutional provision as to the two per cent did not mean to limit the power of the city to only once incurring debt to that amount.

The power to incur debt, or increase indebtedness to the extent of two per cent, was in addition to the existing debt at the time of the adoption of the constitution, and the power would not be exhausted until two per cent was added to the debt existing at the time of the adoption of the constitution: Wheeler v. Phila., 77 Pa. 338; Pike County v. Rowland, 94 Pa. 238; Wilkes-Barre's App., 109 Pa. 554.

In the case of Brooke v. City, 162 Pa. 123, the only question presented was whether the city debt in the sinking fund was to be considered a part of the debt, within the meaning of the constitution.

The question of the inherent power of municipalities in the state of Pennsylvania to borrow money was determined in Com. v. Pittsburg, 34 Pa. 496; Com. v. Pittsburg, 41 Pa. 278; Williamsport v. Com., 84 Pa. 487.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 31, 1897:

This bill was brought by the plaintiffs, citizens and tax payers of the city of Philadelphia, against the defendants above-named, to restrain them from borrowing two sums of $8,000,000 and $3,000,000, respectively, purporting to be authorized by certain ordinances of councils, and from issuing certificates of indebtedness for either of said sums, etc.

A general demurrer having been filed, the cause was heard in the court below on the issue thus presented, and a decree was entered sustaining the demurrer and dismissing the bill with costs. From that decree this appeal was taken. The averments, contained in the bill and admitted by the general demurrer, constitute the only facts in the case; and the question

here, as in the court below, is whether upon those facts, thus admitted by the pleading, the plaintiffs are entitled to the relief prayed for, or any other relief.

In substance, the bill avers that the total debt of the city January 1, 1874, was $59,338,816.97, that the assets then in the sinking fund were of the value of $15,773,644.80, and that the net debt of the city at that time was $43,565,172.17 ; that the assessed valuation of the taxable property of the city at the same time was $548,243,435, and that seven per centum of said valuation was $38,377,047.45, and that the debt of the city, at the time of the adoption of the constitution, January 1, 1874, was in excess of seven per centum of the then assessed valuation of its taxable property.

It further avers that in pursuance of the authority conferred by section 8 of article 9 of the constitution, the legislature passed two acts, one approved May 23, 1874, P. L. 230, the eleventh section of which provides as follows : " The councils of any city of the first class, the debt of which now exceeds seven per centum upon the assessed value of the taxable property therein shall and they are hereby authorized to increase the said debt one per centum upon such valuation ; " the other was approved June 11, 1879, P. L. 137, the first section of which is as follows : " The councils of the cities of the first class be and they are hereby authorized to fund the present floating indebtedness of said cities to the extent of ten millions (10,000,000) dollars, provided the said loan shall not exceed two per centum upon the assessed value of the taxable property of said cities."

It further avers that in pursuance of the act of May 23, 1874, the city increased its debt between January 1, 1874, and January 1, 1886, to the amount of $4,772,950, and as a part of the loan made April 1, 1890 to the amount of $709,485.35, these two sums making an aggregate of $5,482,435.35, which was the total amount of one per centum upon the entire assessed valuation of the property of the city as it was on January 1, 1874, viz : $548,243,535.   The bill further avers that the various loans thus made exhausted the power of the city to increase its indebtedness under said act of May 23, 1874, and also that, under said act of June 11, 1879, the city did fund its floating debt to the amount of $9,199,459.30, and thus exhausted its power to increase its debt under said act.   The increase of indebtedness

thus made under the two last mentioned acts having exhausted the authority of the city to make the increase of three per centum authorized by the last clause of section 8 of article 10 of the constitution, that subject may be dismissed from further consideration.

The bill further avers that on January 1, 1886, the total amount of the funded debt of the city was $62,068,120.22, and the amount of securities then held in the sinking fund was $20,911,775, leaving the total debt of the city at that time $41,156,345.22. The assessed value of the property of the city at that time was $611,309,615, seven per centum of which is $42,791,673.05, and hence the net debt of the city was then $1,635,327.83, less than seven per centum of the then assessed valuation of its property. It further avers that subsequent to January 1, 1886, the city had no lawful right to increase its debt or incur any new indebtedness beyond two per centum of the said valuation without a vote of the electors, except to borrow the sum of $709,485.35, the balance of the debt authorized to be created by the act of May 23, 1874.

It is further averred that, pursuant to the power granted by the constitution, sec. 8, article 9., the city has created new debt and increased its indebtedness from time to time since January 1, 1886, not including refunding loans, to the amount of $20,000,000, which together with the sum of $1,500,000, the residue of the $6,000,000 loan authorized May 15, 1894, not yet issued, makes a total of $23,000,000. Of this amount the sum $709,485.35 was borrowed under the authority of the act of May 23, 1874, and of the total sum thus borrowed, there are now in the sinking fund assets of the value of $6,906,200, making the net amount of new debt incurred since January 1, 1886, under the constitutional authority to borrow two per centum of the assessed value of taxable property therein without a vote of the electors, $15,984,314.65.

It is further averred that the total debt of the city on January 1, 1897, was $54,023,120.22, and the securities in the sinking fund and other assets available in reduction thereof reduce the same so that its net amount on January 1, 1897, was $31,336,674.44. On same date, the assessed value of taxable property was $818,827,549, seven per centum of which is $57,317,928.45, and the net debt of the city therefore was

$25,981,253.99, less than seven per centum of the assessed valuation of taxable property therein.    It is further averred in the bill that two per centum of the assessed valuation of property on January 1, 1897, was $16,376,550.98, and deducting from this the net amount of the new debt created as aforesaid, ($15,984,314.65) since January 1, 1886, shows a resulting amount of $392,236.33 less than two per centum upon the whole assessed value of taxable property on January 1, 1897.    It is also averred that this last mentioned sum is the lawful limit of the present borrowing capacity of the city at this time.    The aggregate of the two proposed loans now under consideration is $11,000,000, and if plaintiffs' contention is correct, there is no authority on the part of the city to make either of them. Both of these proposed loans were authorized by city ordinances ; neither of them was authorized by a vote of the electors of the city.

The averments, facts, figures, etc., set forth in the bill, having been admitted by the pleading to be true and correct, must necessarily be taken as the basis of our judgment in determining the question whether the city has the power to make the loans aforesaid or either of them; and that brings us to the consideration of section 8, article 9 of the constitution, which reads as follows :

" The debt of any city, county, borough, township, school district or other municipality, or incorporated district, except as herein provided, shall never exceed seven per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt, or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property, without the assent of the electors thereof at a public election in such manner as shall be provided by law; but any city the debt of which now exceeds seven per centum of such assessed valuation may be authorized by law to increase the same three per centum in the aggregate at any one time upon such valuation."

This, in connection with the foregoing facts, etc., admitted by the pleading, is the only source of authority, to which we have been referred by the defendants, for making the loans in question.

The first clause of the section is a positive prohibition of any

municipal indebtedness in excess of seven per cent of the assessed valuation of the taxable property in the municipality; and the last clause is a temporary provision for those cases in which the indebtedness was greater than the seven per cent limit at the time of the adoption of the constitution. It was not denied on argument that this was anything more than an emergency provision for such cities as were already indebted to an amount greater than seven per cent of the assessed value of the taxable property therein. It was substantially so held by this court in Wheeler v. Philadelphia, 77 Pa. 338. Mr. Justice PAXSON there said: " The fact was however known to the convention that at that time the debt of the city of Philadelphia, and perhaps other municipalities, exceeded seven per centum. In such instances, an arbitrary provision that there should be no further increase of the debt might have worked great injury by the stoppage of public works already commenced and essential to the public convenience and welfare. It was therefore provided that as to such municipalities the debt might be increased three per centum." This being true, the exceptional and temporary character of this provision is at once apparent. It is equally apparent from the whole tenor of the eighth section—that, if a city whose indebtedness then exceeded the seven per cent limit subsequently reduced her debt below that limit, she at once passed into the category of all the other cities of the commonwealth, and thereafter could only create or increase her indebtedness in the same manner that they could. According to the manifest meaning of section eight, no city which had reduced its debt below the seven per cent limit, could ever again increase it above that limit, and therefore when, in such city, a subsequent creation or increase of debt was desired, it would have to be made in precise accordance with the provision of the second clause of section eight, which, of course, was the rule for all the municipalities of the commonwealth. By the terms of that clause, the limit of the created or increased debt was two per cent upon the assessed value of the taxable property therein, and no more, unless by a vote of the people.

The words are: " nor shall any such municipality or district incur any new debt or increase its indebtedness to any amount exceeding two per centum upon such assessed valuation of property without the assent of the electors thereof at a public

election in such manner as shall be provided by law." This is a grant of power by negative words, but the negation is prohibitive of everything beyond the designated limit. What then is the limit to which a city may go in creating or increasing its debt? Manifestly two per cent, if done by the municipal authorities, and, if a greater amount than that is required, it must be done by a popular vote. That boundary mark is just as precise and definite as the seven per cent ultimate limit prescribed by the preceding clause of the section. It may not be transcended, because no power to do so is conferred by the language of the section. The amount of the new debt or the increased debt shall not exceed two per centum of the valuation. What authority is there for saying that it may be seven per centum by successive increases? Manifestly none. The seven per cent limit is a positive bar to all created or increased debt, and it is only interposed as a final barrier, and is in no sense a specific grant of authority to create indebtedness to that extent, either at once or by successive steps. If any debt in excess of two per cent is required, it can only be obtained in one way, viz: by a vote of the people. But that mode is out of consideration here, because it was not adopted. It is argued here, and was held by the learned court below, that so long as the seven per cent limit was not reached, there might be successive increases which in the aggregate did not exceed that limit. But the vice of that contention is that no such method is authorized by the constitution. On the contrary, it is prohibited by the words of the eighth section above quoted. The amount of the whole debt creation therein authorized is two per centum,—and not any other per centum,—upon the assessed value of the taxable property. If this were not so, the prohibition against a debt creation of more than two per cent, by municipal authority, only, would be easily and absolutely evaded. For if such increase could be made by successive additions of two per cent or less, the whole amount of seven per cent could be successfully reached without any popular vote. Surely this cannot be, because the language of the section prohibits it. And when it is observed that the constitutional provision on this subject may be evaded in this way, that consideration alone is sufficient to condemn the construction and the reasoning upon which the contention is founded. Unless this is true the constitutional prohibition might as well

have been omitted.   But no such conclusion as that can be sanctioned.   It is enough to know that the language of the 8th section permits a debt to be created by municipal authority to the limited extent only of two per cent on the assessed value of the taxable property.   That permission is a unit.   When once exercised its object is fully accomplished, the express limit of the municipal debt thus created or increased is established, and it remains thus established simply, because there is no further authority for its change.   The question whether there may be a subsequent increase by a popular vote is not before us and, of course, we do not decide it.   But it is entirely clear that after the two per cent limit has been reached, there can be no further increase by municipal authority only.

Everything necessary to dispose of this case has already been decided in Wilkes-Barre's Appeal, 109 Pa. 554, in which Mr. Chief Justice MERCUR, speaking for the court, said : " The proposed increase of debt is in itself less than two per cent of the assessed value of the taxable property ; but, added to the previously existing debt, makes the aggregate indebtedness more than two per centum.   The contention is whether this can be done without the previous assent of the electors in the manner prescribed by the constitution.   As we have seen, one clause thereof declares the city shall not increase its indebtedness to an amount exceeding two per centum, without such assent. There is no warrant in the constitution to sustain the proposition that the city may now, and from time to time as it sees proper, within the maximum limit of seven per cent, increase the indebtedness by successive steps if each increase is less than two per cent.   Such action is not sanctioned by either the letter or the spirit of the constitution. . . .   " The argument that ignores the aggregate indebtedness and considers the addition thereto, only proves too much.   It would nullify the right of the electors to vote on the question of increase, altogether.   By successive increases, each less than two per centum, the city might have the aggregate indebtedness reach the seven per centum without a vote of the electors.   Up to that per centum, the city would deny the right of the electors to vote on the question of increase, and beyond that per centum the constitution itself prohibits any increase."   In Wheeler v. Philadelphia, supra, it was said : " The main controversy however was as to

the manner in which such increase should be accomplished. Here again the distinction is preserved between municipalities whose debt is under seven per centum and those in which it exceeds seven per centum. In the former, the municipal authorities may increase the debt from time to time until two per centum has been added, provided the original debt with the increase does not exceed the seven per centum. After the two per cent has been added, there can be no further increase without the vote of the people." To the same effect is Pike County v. Rowland, 94 Pa. 238. In that case, Mr. Justice TRUNKEY said: "In strictness the words may mean as contended by defendant, but the context seems to make it clear that the true sense of the clause is a prohibition of a new debt exceeding two per centum of the assessed valuation without a public vote."

It is clear therefore that in all the cases cited we have adhered to the proposition that the increase of two per cent authorized to be made by the second clause of the 8th section may not be transcended except by a popular vote, and this whether the increase has been made by successive additions, each less than two per cent, or at one time and by one municipal act alone. We have not allowed this percentage of increase to be exceeded in any instance by mere municipal action. It follows, therefore, that as the two per cent limit, in the present case, has been more than reached by previous additions, though by subsequent reductions the aggregate of the additions is now slightly below the two per cent limit, the ordinances authorizing the two loans of $8,000,000 and $3,000,000 respectively, are both invalid, and the plaintiffs' bill must be sustained and the injunction prayed for awarded.

The decree of the court below is reversed and bill reinstated and it is now ordered, adjudged and decreed that the demurrer be overruled and that an injunction forthwith issue against the defendants, and each and every of them, restraining them from borrowing the two sums of $8,000,000 and $3,000,000 respectively, and from issuing certificates of indebtedness for either of said sums; and it is further ordered that the defendants pay all the costs of this proceeding.