## Rawlings v. Fish

(Decided January 28, 1913.)

## Appeal from Madison Circuit Court.

Partnership—Action for Settlement—Appeal—Finding of Chancellor.—
In an action for a settlement of a partnership, evidence as to
certain items in dispute examined and held to sustain the finding
of the chancellor. As to other items, evidence examined, and held
in view of its conflicting character and of the fact that upon a
consideration of the whole case the mind is left in doubt, and
it cannot be said with any reasonable degree of certainty that
the chancellor erred in his conclusions with respect thereto, his
finding will not be disturbed.

BURNAM & BURNAM, for appellant.

J. A. SULLIVAN and S. M. WALLACE, for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This appeal involves the settlement of a partnership
between appellant, C. M. Rawlings, and appellee, E. T.
Fish. The action was brought by Fish, and Rawlings
set up certain claims to the proceeds of the partnership
property by answer and cross petition. On final hearing,
the chancellor gave judgment in favor of Rawlings for
the sum of $500, with six per cent. interest from April
30, 1906, until paid. The judgment recited that the two
shares of stock owned by Rawlings in the Richmond,
Kingston and Berea Telephone Company were included
in the judgment, and that they were to be surrendered
at the time the judgment was paid. If surrendred, Fish
was to be credited with $50 upon the judgment in lieu
thereof. The judgment further provided that each party
was to pay his own costs. From the judgment thus en-
tered, Rawlings appeals and Fish prosecutes a cross
appeal.

It appears that in 1896 or 1897 Rawlings and Fish
began the construction of a telephone line between Berea
and Lancaster, known as the Berea Paint Lick and
Lancaster Telephone Line. They secured contributions
from various parties, and also did certain work in con-
nection with the construction of the line. They put into
this line practically the same amount of work and money,
and afterwards drew up a written contract providing
that they were to be equal partners. The contract pro-
vided that each partner had contributed $500 as the

capital stock of said company. Under the contract, books of account were to be kept, on which should be entered all money received or paid. No money or other property was to be drawn by either party from the partnership for his own use, except by the written consent of the other partner. Neither partner had any power to create any debt against the firm or to make any contract to bind the firm as surety without the written consent of the other party. The contract covered any additional lines that the company might erect or acquire.

About the time, and perhaps prior to the time, of the construction of the Berea, Paint Lick and Lancaster line, Rawlings and Fish also constructed the Berea, Kingston and Richmond Telephone Company, a corporation. Of the stock of this company Rawlings owned two shares, while Fish owned a larger number, and subsequently acquired practically all the stock. The stock consisted of 40 shares of $25 each.

In addition to the foregoing lines, there was in Berea what is known as the Berea Exchange, consisting of all the telephone lines, connections, etc., in Berea, together with a line from Berea to White Station and another line from Berea to Big Hill.

For several years Rawlings lived in Berea and took an active interest in the telephone lines. For a while in 1900 and 1901, he and his wife operated the exchange. Rawlings says that during this time the earnings of the line exceeded the cost of operation by at least $200. On the other hand Fish claims that included in these receipts are several items which were never collected, and others which were not due entirely to the Berea, Paint Lick and Lancaster Line, but were to be prorated with the other lines. The books which Fish kept are frequently referred to, and reference is made in the record to an abstract of the books which he filed as an exhibit, and also to an abstract which Rawlings filed as an exhibit. Neither of the exhibits is in the record. According to Fish's testimony, the receipts for the Berea, Paint Lick and Lancaster Line during the whole time that he was secretary and treasurer, amounted to only $675.07, while the disbursements amounted to $992.27. Rawlings' statement from the same books, as testified by him, shows the receipts to be $993.64, while the disbursements were $801.34.

It appears that in 1906 Fish, without consulting Raw-

lings, sold a one-half interest in the Berea, Paint Lick and Lancaster Telephone Line and one-half of his stock in the Berea, Kingston and Richmond Telephone Company, and also a one-half interest in the Berea Exchange, to W. H. Porter, for the sum of $2,500. In the same year Fish, Porter and one Claggert organized a corporation known as the "Berea Telephone Company," the capital stock of this company being $30,000, divided into 300 shares of $100 each. $10,000 of this capital stock was estimated by the incorporators as having been paid up in the following manner; Claggert contributed $3,333.33 in cash; Fish and Porter each put in $500 in cash. Fish also put in his remaining half-interest in the Berea, Paint Lick and Lancaster Line, the remainder of his stocks in the Berea, Kingston and Richmond Company and his remaining half-interest in the Berea Exchange and accessory lines. In 1907, Fish sold to Porter his other one-half interest in said property, that is his one-third interest in the corporation, the Berea Telephone Company, for $2,500. It will thus be seen that Fish received for all the properties the sum of $5,000, less $500, or $4,500.

Porter says that in making the purchases from Fish, they put upon the various properties the following estimate: (1) Berea, Paint Lick and Lancaster Telephone Line, $500; (2) Berea, Kingston and Richmond Telephone Company stock (38 shares) $1,000; (3) Berea Exchange and accessory lines, $3,500. The testimony for Fish is that the Berea, Paint Lick and Lancaster line was in a run-down condition, and was practically worthless. On that account it had to be re-built. This state of affairs is testified to not only by Fish and Porter, but by the manager of the East Tennessee Telephone Company at Frankfort, Kentucky, who examined the line with a view of purchasing it for his company. The testimony for Fish is also to the effect that the franchise was worthless, as anybody could get a franchise. Fish swears that the Berea, Paint Lick and Lancaster Line was not worth over $500. The managers of the East Tennessee Telephone Company at Frankfort state that it was worth considerably less than that. At first Fish swears that the company was indebted to him in the sum of $135. He afterwards made a few changes in his books, and fixed this sum at $323.20. This sum he claims to have advanced out of his individual funds in order to pay the debts of the line. Fish claims to be the sole

owner of the Berea Exchange. He says that he brought poles from his mountain farm and purchased all the wire used in the Exchange, and that Rawlings had no interest whatever in it. On the other hand, Rawlings, while admitting that he did not put any money into the Berea Exchange, claims that he helped to construct it, and made the arrangements for the switch-board. He also claims that Fish constructed the Berea exchange with the proceeds of money received by him from the connecting telephone lines, and that half of these proceeds belonged to Rawlings. It is estimated that the Berea, Paint Lick and Lancaster line originally cost about $788.56. This is exclusive of the franchise and of the work done by Fish and Rawlings. In the written contract between the parties each of their shares is estimated to be worth $500.

Rawlings insists that the valuation placed by Fish's witnesses on the Berea, Paint Lick and Lancaster line is entirely too low, while that placed on the Berea Exchange, which Rawlings claims cost only about $600, is excessive. Rawlings also insists that he is an equal partner with Fish in the Berea Exchange.

The chancellor evidently fixed the value of the Berea, Paint Lick and Lancaster line at about $900. The parties themselves fixed it at about $1,000 by the partnership contract, and we see no reason to disturb the value thus fixed.

As to whether or not there was a partnership in the Berea Exchange, the evidence is very conflicting. Fish swears one way and Rawlings the other. It is evident that Fish paid for the poles and wires, while it is equally true that Rawlings had something to do with making the contracts for the switch-boards. Rawlings insists that even if Fish did pay for the poles and wires, he did it with receipts from the telephone company. The evidence fails to show that the receipts exceeded the expenditures, and the written contract between the parties makes no reference to the Berea Exchange. The chancellor was evidently of the opinion that the partnership did not include the Berea Exchange.

Fish insists that the judgment is erroneous because of the provision with reference to the two shares of stock in the Berea, Kingston and Richmond Telephone Company. It is argued that the judgment is manifestly for $50 too much, and that Fish does not desire the two shares of stock held by Rawlings. It is clear that the

two shares of stock are valued in the judgment at $50. If Rawlings surrenders the stock, the judgment is for $500; if he fails to surrender it, the judgment is for $450. The judgment, therefore, in effect is simply a judgment for $450 and we see no reason to disturb it because of the stock feature.

Fish also insists that the court failed to give him credit for the $323 which he paid in excess of the receipts from the telephone company. We are unable to pass on this item, because neither the books nor the abstracts from the books, referred to as exhibits in the testimony are before us.

The important question in this case is: Did the partnership embrace the Berea Exchange. In view of the conflicting evidence upon this question, and of the fact that upon a consideration of the whole case the mind is left in great doubt, and we are unable to say with any reasonable degree of certainty that the chancellor erred in his conclusion, the finding of the chancellor will not be disturbed. Byassee v. Evans, 143 Ky., 415; Wathen v. Wathen, 149 Ky., 504.

Judgment affirmed both on original and cross appeals.