## City of West Covington v. Dods.
## Same v. Dods, et al.

(Decided March 5, 1913.)

### Appeals from Kenton Circuit Court
### (Common Law and Equity Division).

1. Municipal Corporations—Contract—Exceeding Revenue and Income for the Year—Section 157, Constitution—Action to Enjoin—Defense Based on Agreement to Look to Special Fund—Plea of Fraud—Evidence.—In an action against a city and its council to enjoin them from entering into a contract for a water plant on the ground that the contract provided for an indebtedness in excess of the revenue and income for the year without the assent of the voters, where the city pleaded a special agreement by which the contractor agreed to look solely to the proceeds of certain real estate owned by the city, and the plaintiff claimed the agreement was obtained by fraud, evidence examined, and held, in view of its conflicting character, and of the fact that upon a consideration of the whole record the mind is left in doubt, the finding of the chancellor in favor of plaintiff will not be disturbed.

2. Municipal Corporations—Indebtedness in Excess of Section 157, Constitution—Evidence.—In an action by a taxpayer to enjoin the city from incurring an indebtedness in excess of its revenue and income for the year, contrary to Section 157, Constitution, evidence examined, and held that the proposed indebtedness would exceed the revenue and income for the year in which it was proposed to be incurred.

3. Municipal Corporations—Intention to Incur Indebtedness in Excess of Revenue and Income—Section 157, Constitution—Injunction—When Proper.—In an action by a taxpayer to enjoin a city and its officers from incurring an indebtedness in excess of the revenue and income of the city for the year in which it was proposed to incur the indebtedness, an injunction was proper where the conduct of its officers and every circumstance connected with the case show that if the injunction had not been granted the indebtedness would have been incurred.

MYERS & HOWARD and E. J. BRITTLING for appellants.

HALL & ADAMS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in each case.

These two appeals were heard together and will be considered in one opinion.

In the month of November, 1908, the city of West Covington enacted an ordinance for the construction of

certain water mains in the city, and directed the city clerk to advertise for bids. The ordinance provided that the cost of the construction of said water system should be paid by the city, one-half on the completion and acceptance of the work, and one-half one year thereafter. The city clerk advertised for bids, which were submitted to the city council. The bid of D. R. P. Dimmick & Company, who agreed to do a certain portion of the work for $2,388, was accepted on December 10, 1908. His bid of $3,957.73 for the remainder of the work was approved but was laid over for action at the regular meeting in January, 1909.

The first suit mentioned in the caption was brought by Thomas Dods, a citizen and taxpayer of the city of West Covington, against the city, its mayor, councilmen and city clerk, to have the ordinance accepting the bid of $2,388 declared void, and to enjoin the city and its officers from entering into a contract with Dimmick & Company, on the ground that the indebtedness incurred by the ordinance exceeded the revenue and income of the city for the year 1908, without the assent of two-thirds of the voters thereof, voting at an election held for that purpose, and was therefore violative of section 157 of the Constitution.

The second suit mentioned in the caption was brought by Thomas Dods, on January 11, 1909, to enjoin the city and its officers from accepting the bid of Dimmick & Company of $3,959.73 for the remainder of the work, on the ground that the proposed indebtedness would exceed the revenue and income of the city provided for the year 1909, without the assent of two-thirds of the voters thereof voting at an election held for that purpose. Charles Moser filed a similar action, and the two actions were consolidated in the court below.

We shall proceed to a consideration of the two suits in the order named:

(1)    In the first mentioned action the city first defended on the ground that the proposed indebtedness did not exceed the revenue and income provided for the year 1908. A restraining order was entered. On January 20, 1909, the defendants filed an amended answer, wherein they set up the further defense that it was all the time the understanding between the city and Dimmick that he, for his compensation for the construction of said water system, should look solely to the funds to be derived from the sale of the city's accumulated real estate. For that

reason Dimmick's bid provided that the payment for said work should be made mutually agreeable to the city of West Covington and the said bidder. To effectuate this purpose the city council prior to the acceptance of the bid of Dimmick adopted a resolution directing its proper committees to dispose of said real estate, and to keep the money derived therefrom in a separate fund to remain inviolate for the purpose of paying the indebtedness about to be incurred by the installation of the water system. On January 12, 1909, said Dimmick, in compliance with said understanding and agreement, wrote the following letter, which was read in an open session of the council on January 14, 1909, and spread on the minutes:

"Cincinnati, Ohio, Jan. 12, 1909.
"Hon. Mayor and City Council,
          West Covington, Ky.
"Gentlemen:
"In reference to my bid of $2,388 for the installation of a six inch water main accepted by you on December 10, 1908, I desire to state that my understanding was at that time that I was to look only to the special fund provided by you for the payment of same. I am now willing to look only to said special fund so provided for payment of said bid of $2,388, and will enter into contract for same to that effect.          Yours truly,
          "D. R. P. Dimmick."

The defendants further alleged that if the restraining order was dissolved, they would enter into a contract with Dimmick by which he would look solely to the fund arising out of the sale of said real estate and not otherwise. The allegations of the amended answer were traversed. On February 10, the trial court granted a temporary injunction. Application to dissolve this injunction was made to Judge W. E. Settle, who heard and considered the motion with five other judges of this court. The injunction was dissolved on the ground that the city had agreed to pay Dimmick out of the funds derived from the sale of its accumulated real estate not in public use, and that Dimmick had agreed to look solely to that fund for his compensation.

On the return of the case plaintiff filed a reply claiming that the letter written by Dimmick was obtained by fraud. Evidence was heard, and the case proceeded to trial. On October 24, 1911, the ordinance in question was adjudged to be invalid, and the defendants were perpet-

ually enjoined from entering into a contract with Dimmick & Company, or any other person, for the purpose of laying the water main referred to. From that judgment certain of the defendants appeal.

The evidence being sufficient to show, and it being practically conceded, that if there was no agreement on the part of Dimmick & Company to look solely to the proceeds of the real estate, the indebtedness incurred for the water system exceeded the revenue and income provided for the year without the assent of two-thirds of the voters of the city of West Covington, we proceed to a discussion of the effect of the letter in question, viewed in the light of the testimony taken on the return of the case, after the temporary injunction was dissolved.

The city solicitor testifies that just prior to the time the bid of Dimmick & Company was accepted, he had a conversation with Dimmick, who then agreed to look solely to the real estate fund. This fact was communicated to several of the councilmen, and upon the faith of this agreement the resolution hereinbefore referred to, setting aside the real estate for the purpose of paying for the water system, was adopted. The city solicitor also claims that when he approached Dimmick for the purpose of securing the letter written on January 12th, and set out above, the only question discussed by them was the value of the real estate in question, and upon being assured that it was sufficient to pay Dimmick the contract price, Dimmick wrote the letter in question. Col. R. W. Nelson, who was Dimmick's attorney, and who was telephoned to come to Dimmick's office, also states that the only question considered was whether or not the real estate was of sufficient value to pay the contract price, and that he advised Dimmick that it was. He further testified, however, on cross-examination, that it was the understanding at the time that the letter written by Dimmick was not to be binding on Dimmick, but that it was written by Dimmick at the request of the city solicitor to be used by the latter for some purpose before the city council. He also says that he was under the impression that Dimmick was unwilling to look to the lots for compensation, but that witness thought that as there was a large number of lots, they would be sufficient. He also thinks that Dimmick spoke about the money arising from certain interests the city had, but does not remember what they were.

As to the report made by the city solicitor to the

members of the council, the city clerk confirms the city solicitor to a certain extent, but the city clerk's testimony is not very material. Councilman Myers, who was introduced by appellant, testified in substance that it was his understanding that the real estate was to be in the nature of a security for the contract price.

Dimmick testified that the city solicitor came to his office and stated that the town had made arrangements to pay for the work as stated in his proposition during the following June, and that they would get the money derived from the taxes and liquor licenses to pay the contract price. This was a special fund that they wanted him to look to for payment. The city solicitor asked for a letter, and said that he wanted to use it in the meeting of the city council. He did not understand at the time he wrote the letter that he was to look solely to the unsold vacant lots and delinquent taxes. On January 30, 1909, witness wrote a letter to the mayor and city council withdrawing his former bid, and stating that he was willing to carry out his original agreement on the basis of his letter of January 12, 1909, upon prices sufficient to cover the increased cost of material. On May 19, 1909, upon request of the city solicitor, he made another bid on the work at the price of $2,558, the work to be paid for in cash upon its completion. On May 29, 1909, he withdrew the latter bid because he understood the city had no money that it could appropriate for the payment of his claim if he did the work. On cross-examination he again stated that at the time he wrote the letter the city solicitor had stated to him that arrangements had been made to pay for the work from taxes and saloon licenses. He also stated that he never knew anything of the resolution passed by the council setting aside the real estate for the payment of the water system contract. He also claims that he never wrote the letter of January 12th because of the resolution, but simply because of the city solicitor's statement in regard to the June taxes and saloon licenses.

The city solicitor testified that the conversation with reference to the June taxes and saloon licenses had reference only to Dimmick's letter of May 19, 1909. Dimmick further claims that the city never notified him to go on with the contract, but on the contrary, requested a bid on a cash basis based on the advance in the price of materials.

In addition to the foregoing facts, the pleadings show

'that the city in its original answer claimed that it had sufficient revenue and income to meet the necessary payments on the contract price for the water system. It was not contended at that time that there had been any contract or agreement between the city and Dimmick that he was to look solely to the real estate fund. After obtaining the letter from Dimmick, the defense that Dimmick was to look solely to the real estate fund was presented by an amended answer. While the solicitor claims that he demanded of Dimmick that he comply with his contract, it does not appear that any formal action was ever taken by the city council with reference to this matter. On the contrary, Dimmick denies that any request was made of him to carry out the contract, but contends that a new bid was asked for on a cash basis. While there are some facts and considerable testimony tending to show that Dimmick did agree to look solely to the real estate fund, yet the circumstances under which the letter was obtained, together with the conduct of the city prior to the time it was written and subsequent to the dissolution of the injunction, considered in connection with the evidence that the letter was not to be binding on Dimmick, and that other revenues in addition to the real estate were embraced in the special fund, we cannot say with any reasonable degree of certainty that the chancellor erred in concluding that the letter was not obtained in good faith and that there was never any binding agreement between Dimmick and the city that he should look solely to the real estate for the payment of the contract price. In a case like this, where the evidence is conflicting, and upon a consideration of the whole case the mind is left in doubt, it is our rule not to disturb the finding of the chancellor. Byassee v. Evans, 143 Ky., 415; Wathen, et al. v. Wathen, 149 Ky., 504.

(2) In the second suit to enjoin the city and its officers from accepting the bid of Dimmick & Company of $3,959.73 for the remainder of the work, the chancellor rendered judgment in favor of plaintiffs, and the defendants appeal.

Defendants insist, first, that the evidence fails to show that the proposed indebtedness will exceed the revenue and income provided for the year 1909, and, second, that as the bid for the remainder of the work was not accepted, but was laid over, the injunction ought not to have been granted, because the acceptance of the bid being optional with the council, it might never accept it or enter

into any contract with Dimmick imposing any liability on the city.

Without discussing in detail the income and expenses of the city for the year 1909, we deem it sufficient to say that we have carefully examined the evidence, and it leaves no doubt that had the proposed indebtedness represented by the bid of Dimmick been incurred, it would have been far in excess of the revenue and income provided by the city for the year 1909.

There was no absolute denial on the part of the defendants that they would accept Dimmick's bid. Their denial is simply to the effect that they would not accept it unless they could do so without exceeding the limit of indebtedness prescribed by the Constitution. Furthermore, the record discloses the fact that immediately upon bringing this suit special counsel were employed to represent the city. In the resolution by which they were employed, counsel were directed to contest the suit, and in the event an injunction was issued, to apply to a judge of the Court of Appeals to have it dissolved. Thereafter the suit was bitterly contested. The mere ambiguous disclaimer by the defendants of any intention to incur the proposed indebtedness is not sufficient to disprove their real intention as disclosed by their own conduct and all the facts of the case. This is not a case, therefore, where the city might or might not have incurred the proposed indebtedness. It is a case where the conduct of its officers and every circumstance connected with the litigation unmistakably show that had not the injunction been granted by the chancellor the proposed indebtedness would have been incurred. We, therefore, conclude that the injunction was proper.

The judgment in each case is affirmed.