## Cole, et al. v. Collins.

(Decided November 10, 1915.)

Appeal from Marshall Circuit Court.

Appeal and Error—Finding of Chancellor.—Where evidence is conflicting and upon a consideration of the whole case the mind is left in doubt and the Court of Appeals cannot determine with reasonable certainty that the chancellor has erred, the finding will not be disturbed.

R. L. SHEMWELL, W. M. REEDER and E. L. COOPER for appellants.

J. G. LOVETT, J. E. FISHER and JOE L. PRICE for appellee.

Opinion of the Court by William Rogers Clay, Commissioner.—Affirming.

D. T. Collins owned a farm consisting of about 166 acres in Marshall County. He placed the farm in the hands of Charles Cole, a real estate dealer, and authorized him to sell it. He agreed to pay Cole all over $5,810.00 that he realized from the sale of the farm. Cole sold the farm to Roy Houser and on July 12th, 1913, Collins executed a deed to the property. The purchase price was fixed at $6,500.00, to be paid as follows: $1,000.00 on March 1st, 1914; one note of $475.00, due and payable to the Bank of Benton, and five notes for $1,005.00 each, due and payable on March 1st, 1915, March 1st, 1916, March 1st, 1917, March 1st, 1918, and March 1st, 1919, respectively, and bearing interest at the rate of 6 per cent. per annum, payable annually until paid. To secure the payment of the purchase money, a lien was retained on the land. At the same time Collins executed to Cole a note for $690.00 in payment of Cole's commission.

On September 1st, 1913, Collins brought two separate actions, one against Roy Houser to set aside the deed in question on the ground of fraud and misrepresentation, and the other against Cole for the cancellation of the note on the ground that it was obtained from him by fraud. Afterwards the two cases were consolidated and on final hearing plaintiff was granted the relief asked. The defendants appeal.

The particular fraud relied upon is the failure of the deed to specify that the $475.00 due the bank was to be paid before possession was given, and to provide that upon default in the payment of any one of the notes all the notes should become due and collectible. It is further charged that Cole represented that Houser was a well-to-do man and could pay for the farm. Collins says that the agreement was that the $475.00 was to be paid when Houser returned to Benton, and if any one of the notes was not paid at maturity all the other notes were to become due and collectible. He further says that Cole, who prepared the deed, read the deed as if it contained the provision that all the notes were to become due if any one was not paid at maturity. He further says that Cole recommended Houser as being in good fix and able to pay for the place. A few days after the trade

was made he learned that the deed did not contain any provision in regard to all the notes becoming due if any one of them was not paid. It further appears that Cole took Mr. Houser off once or twice, and also Collins once or twice, and talked with them privately. It is also shown that Houser owned a tract of land worth about $1,000.00 and four or five hundred dollars' worth of personal property. N. R. Estes, who was present when the trade took place, says that Collins wanted $1,500.00 down when the land was sold. He also stated that he wanted twelve months between the notes and, as he understood it, if one note fell due and was not paid all the notes became due. J. S. Rickman met Houser in Paducah and says that Houser told him that Charlie got him to go over there and buy the place so Charlie could get his commission; that if Charlie didn't come clean with him he was going on and keep the place himself; that he had six years in which to pay for the place and that if he didn't want to pay for it he could give it up. Houser also said that he would buy all of Marshall County if he could buy it at that rate. A man by the name of Faust testified that Houser wanted to sell him the timber in order to get the money to pay something on the place. D. M. Karnes testified that he had a conversation with Houser, in which he asked Houser if Charlie Cole and he hadn't acted shaky with the old man. Houser said: "No, I played fair and square." Houser further said: "Well, it was through ignorance, by God, we got them into it," and also remarked that "the law didn't excuse ignorance." L. Gordon testified that Houser said he didn't know where the tobacco patch was; that Mr. Cole told him to just buy the farm and not return a word. He further states that Houser told him that the old man was not capable of attending to his business and ought to have a guardian; that he couldn't read and they ran it over him. O. T. Davis testified that shortly after the sale from Collins to Houser he began negotiations with Cole for the purchase of the same tract of land. Cole stated that Houser had six years in which to pay for the farm and wouldn't have to pay a dollar on it unless he wanted to and he would draw up the notes the same way for Davis.

According to the evidence for the defendant, Collins was anxious to sell his farm. He did not need

the money but wanted the interest to live on. It further appears that two days after the sale in question was made to Houser, Collins sold another tract of land, through Cole as his agent, to one L. G. Harmon. Collins says that this deed was to be written so that when one note became due they were all to become due. He further stated that Mr. Harmon was willing for the deed to be changed at any time. On introducing Mr. Harmon, the latter stated that Cole asked Collins if he wanted the deed written so that all the notes would become due if one became due and was unpaid, and Collins answered that he would not make the deed any other way. The Harmon deed referred to contains a provision to the effect that if any one of the notes became due and was not paid all the notes would become due. Cole denies that anything was said about a provision in the deed with respect to the maturity of all the notes in case one became due and was not paid, and denies that he read the deed as if it contained such provision. He further says that he made no representation as to Houser's ability to pay for the place, with the exception of the statement that Houser owned a small farm. Mr. Collins stated that he wanted the notes written so that he could collect the interest; that he did not need the money but wanted the interest paid annually. Cole further says that he acted merely as an agent to sell the land and that there was no fraud or conspiracy whatever between him and Houser. Houser also testified that Collins said that just so he got the interest was all he wanted. He did not tell Sam Rickman that he was buying the place for Charlie Cole, nor did he tell him that he would buy all of Marshall County if he could get it on those terms. He did meet Sam Rickman, but the latter had been drinking. A number of witnesses testified that, while plaintiff's health was bad, he had sufficient mental capacity to attend to business.

While it may be true, as a general rule, that the acts and declarations of a co-conspirator are not admissible as evidence against his co-conspirators until the conspiracy has first been established by evidence other than the statements of a co-conspirator, and that the declarations of a co-conspirator after the purpose of the conspiracy has terminated cannot be proven against other conspirators—Metcalf v. Connor, 16 Ky. (Lit. Sel. Cases), 497, 12 Amer. Dec. 340; Sodusky v. McGee, 7 J. J. Marshall, 266; Shelby v. Commonwealth, 91 Ky.,

571; 8 Cyc. 680-682—yet there are many other circumstances in the case tending to sustain the finding of the chancellor. Cole being the agent of plaintiff, sustained a confidential relation to him. In making the sale and drawing the deed, it was his duty to act in good faith. The evidence shows that Houser, before making the purchase, made but a slight examination of the farm. It is also shown that Houser owned but little property and this was probably exempt. Plaintiff and N. R. Estes both say that the agreement was that if one of the notes was not paid at maturity all the notes were to become due. Plaintiff further says that the deed was read as if it contained such a provision. As written, the deed places plaintiff in the position where he would either have to wait until all the purchase money became due or, in case the farm could be divided without materially impairing its value, enforce the payment of the different notes by separate sales of small portions of the farm. While it may be true that in the hurry of closing a transaction the parties might omit to put in a deed a provision to the effect that if one of the notes should not be paid on maturity all the notes should become due, yet neither Houser nor Cole now claims that such provision was not put in the deed because the parties overlooked it. They are both insisting that the deed as written expresses the agreement between the parties. That Cole was cognizant of the effect of the deed as written is clearly shown by his attempt to induce O. T. Davis to purchase the same property by telling him how the notes were drawn to Collins, and that if Davis would buy the farm his notes would be executed in the same way. Considering the fact that Houser made no careful examination of the farm, that his means were entirely insufficient to pay for it, that Cole had a large commission at stake, that the deed was drawn in such favorable terms and it is not now claimed that this was the result of any mistake on the part of Cole in drawing the deed, and that Collins claims that the deed was read as if all the deferred payments would be precipitated if one of the notes was not paid at maturity, it is apparent that there is some evidence tending to support the conclusion of the chancellor. Where, as in this case, the evidence is conflicting and upon a consideration of the whole case the mind is left in doubt, and it cannot be said with any reasonable degree of certainty that the

chancellor has erred, it is our rule not to disturb his finding. Rawlings v. Fish, 151 Ky., 764; 152 S. W., 941; City of West Covington v. Dods, 152 Ky., 617; 153 S. W., 964.

Judgment affirmed. Whole court sitting.