## Weddington, et al. v. Weddington, et al.

(Decided March 24, 1916.)

### Appeal from Pike Circuit Court.

1. Appeal and Error—Findings—Conclusiveness—Equity Cases.— Where the evidence conflicts and the mind is left in doubt upon the whole case, so that the Court of Appeals cannot determine with reasonable certainty that the chancellor erred, his findings will not be disturbed.

2. Deeds—Action to Set Aside—Evidence.—In an action to set aside a deed on the ground of fraud, undue influence or mental incapacity of the grantor, evidence considered and held to support the finding of the chancellor denying the relief asked.

J. S. CLINE and MAY & MAY for appellants.

YORK & JOHNSON and W. K. STEELE for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Plaintiffs, Crit Weddington and others, brought this suit against Ballard and John Weddington to set aside a deed made to them by John F. Weddington on June 22nd, 1912, and to recover the value of certain timber removed by the defendants from the land covered by the deed. The conveyance was attacked on the ground of fraud, undue influence and mental incapacity. Judgment was rendered in favor of the defendants and plaintiffs appeal.

The facts are as follows: The decedent, John F. Weddington, was never married, and died intestate on June 22nd, 1912, leaving plaintiffs as his only heirs at law. On June 10th, 1912, the decedent sold and conveyed to the defendants a tract of land in Pike county, which was surrounded by other lands belonging to defendants. The consideration cited in the deed was $2,000.00. The decedent reserved a life estate in the land conveyed. It further appears that about May 1st, 1912, the decedent suffered a slight paralytic stroke, which affected his side. At the time of the execution of the conveyance he was confined to his house. The deputy clerk who took the acknowledgment was summoned by Ballard Weddington. The deputy came to the home of the decedent. Before acknowledging the deed decedent called for a scrap of paper and wrote his name thereon. He then signed and acknowledged the deed. When the check for $2,000.00 was handed to decedent, he said, "What is this?" While the deed was being read decedent asked the deputy to read it low, and this request was also repeated by Ballard Weddington. The decedent endorsed the check, which was then placed to his credit in bank. The deed was not put to record until after decedent's death.

The evidence given by certain of the plaintiffs, who state that they were at the decedent's home a few days before his death, tends to show that decedent was at times in a stupor and failed to recognize them, and that during the last few days preceding his death he was frequently given whiskey and morphine. It was also shown that the land in question was worth very much more than the sum paid by the defendants.

The evidence for defendants, as given by the attending physician, the nurses and others who visited the de-

cedent prior to his death, tends to show that the de-. cedent was a strong-minded, self-willed man, and that his mind was perfectly clear at the time the conveyance was made. It further appears from their testimony that, some five or six days after the execution of the deed, decedent developed a case of pneumonia, and that it was not until then that he was given a little whiskey in water, nor was he given any morphine until three or four days before his death. It is also shown that while the decedent lived at one time with Crit Weddington, some estrangement arose, and that since that time decedent had not been on friendly terms with him or any of plaintiffs. On the contrary, plaintiffs very rarely, if at all, called on decedent. There was also testimony to the effect that the defendant's father was raised by the decedent and that decedent was very fond of defendants. On numerous occasions he stated that he wanted the defendants to have his property and frequently requested them to buy his farm.

It may be conceded that if this were a mere trade between decedent and defendants, very slight circumstances tending to show fraud, undue influence or mental incapacity, coupled with gross inadequacy of price, would be sufficient to authorize the cancellation of the deed. We think it clear, however, that the decedent, though desirous of providing for his own wants during the remainder of his life, which he did by reserving absolute control over the land, and by exacting, at the same time, a substantial consideration, really intended that the defendants should have the benefit of such property as he owned. This being true, he had the right, if he so desired, to give the land to the sons of the father whom he had raised, provided, of course, that he was not mentally incapable of making the deed, or was not a victim of fraud or undue influence. Under the circumstances, therefore, the fact that the price was inadequate will not be regarded as controlling. On the contrary, the whole case turns on the decedent's strength of will and clearness of mind when the deed was executed. It is our rule not to disturb the finding of the chancellor on a question of fact, where the evidence is conflicting, and, upon a consideration of the whole case, the mind is left in such doubt that we cannot determine with reasonable certainty that the chancellor has erred. City of West Covington v. Dods, 152 Ky. 617, 153 S. W. 964; Raw-

lings v. Fish, 151 Ky. 764, 152 S. W. 941. The above doctrine is peculiarly applicable to a case like this, where a solution of the questions presented depends altogether on the credibility of the witnesses.

Judgment affirmed.