TULLOS v. CHURCH, County Judge, et al. (No. 5400.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 7, 1914.)

1. COUNTIES (§ 196*)—CONTRACTS—EXISTING DEBT LIMIT—INJUNCTION.

In view of Rev. St. 1911, art. 4643, subds. 1, 2, providing that a writ of injunction may be granted when the applicant is entitled to the relief demanded, and it requires the restraint of some act prejudicial to him, and where, pending litigation, a party is doing or threatening to do some act in violation of the right of the applicant, a taxpayer in a county may not only maintain a suit to enjoin the execution of a void debt, but to prevent illegal tax levy, in excess of the county's constitutional debt limit.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

2. COUNTIES (§ 196*) — INDEBTEDNESS — INJUNCTION—PETITION.

A taxpayer's petition, in a suit to enjoin a county from an illegal tax levy to meet a contract obligation in excess of the constitutional debt limit, must affirmatively show that the alleged prior indebtedness had been legally created, and was a valid and subsisting obligation against the county, when the contract obligation was sought to be created.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

**3. COUNTIES (§ 222\*)—ACTION ON OBLIGA-TIONS.**

Plaintiff, in a suit to obtain a judgment on an obligation of a county, must plead and prove all the things requisite to make it a valid and binding obligation.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 355–359; Dec. Dig. § 222.\*]

Appeal from District Court, Live Oak County; F. G. Chambliss, Judge.

Action for injunction by W. Tullos against F. H. Church, County Judge, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Swearingen & Ward, of San Antonio, for appellant. Denman, Franklin & McGown, of San Antonio, and Dougherty & Dougherty, of Beeville, for appellees.

CARL, J. This suit was instituted by W. Tullos, appellant, against F. H. Church, county judge, and the members of the commissioners' court of Live Oak county, and the county and district clerk and county treasurer, for an injunction to restrain the execution and delivery of any contract with the Alamo Construction Company, the Midland Bridge Company, or any other person or company, and to restrain the execution and delivery of any warrant or warrants in any sum for the payment of any part or all of any contract for bridge purposes; the petition alleging, substantially: That the plaintiff is a property taxpaying citizen of Live Oak county; that the total value of taxable property in that county is $4,642,000; and that "there is now and was on the 17th day of October, 1914, an outstanding indebtedness created by the county commissioners' court for road and bridge purposes amounting to approximately $75,811.74," the gross items of which are set forth, as well as the due dates. It is further alleged that the outstanding existing indebtedness requires an annual levy and collection in taxes in the sum of more than $7,000, and that:

"The annual tax that must be levied and collected to pay these obligations of the county of Live Oak, Tex., now existing and outstanding, is in excess of 15 cents on the $100 of the valuation of all property in the county of Live Oak, Tex."

The petition also sets out the following order of the commissioners' court:

"On this the 15th day of September, A. D. 1914, being the second day of the regular September term, A. D. 1914, all members of this commissioners' court of Live Oak county being present, there came on to be heard the matter of building the bridges and approach, to wit: Four bridges on the Kittie-Oakville Road and five bridges on the George West-Lyne Ranch Road and an approach to the Nueces River Bridge, and issuing of warrants in the payment therefor and the levying of a tax for payment of said warrants and interest thereon, and bids for the building of the said bridges and approach having been duly advertised for as provided by law, and the Alamo Construction Company having made the lowest bid therefor, is hereby awarded the contract for said work on the ex-

press condition that a final contract shall be drawn up satisfactory to all parties to the contract and that the aforementioned successful bidder shall give bond satisfactory to all parties in the sum of $5,500 conditioned on the satisfactory completion of said work according to said contract and the full performance by said Alamo Construction Company of said contract. It is further ordered by the commissioners' court that the warrants of Live Oak county be issued to Alamo Construction Company now for the payment for said bridges and approach, in the sum of $10,895, being the amount of said bid; but it is further provided and ordered that said warrants shall not be delivered to said Alamo Construction Company, except in payment for labor done and material purchased and delivered to said Alamo Construction Company, except in payment for labor done and material purchased and delivered at Kittie and George West, according to the estimates made by Bartlett and Ranney, engineers of San Antonio, Tex., of the value of such material and labor, provided that not more than 80 per cent. of such amount of warrants need be delivered until the work is finally accepted by the county, and upon such final settlement all remaining of said warrants shall be delivered as per contract. And it is further ordered that warrants of Live Oak county for $700 be issued to Bartlett and Ranney; said warrants are for payment for plans, specifications, and inspection of construction of the above-described work and traveling expenses in connection therewith. And it is hereby further ordered that a road and bridge tax be and is hereby levied annually for Live Oak county sufficient to pay annually the interest on all of the warrants above ordered issued to the Alamo Construction Company and to Bartlett and Ranney and sufficient also to pay each year an amount equal to 2 per cent. of the principal of said warrants into a sinking fund for the payment of said warrants."

The debt thereby sought to be created is alleged to be in addition to the debts herein formerly shown. The suit is to restrain the execution of the contract and the execution and delivery of the warrants provided for in said order, which are payable in five years, because the county has exhausted its borrowing capacity for road and bridge purposes, and that no special tax for road and bridge purposes has been voted by the people.

The trial court sustained the general demurrer and the following special exceptions:

"First. Plaintiff's petition is insufficient, in that it does not show that any injury or threatened injury will be caused to plaintiff by the doing of the acts sought to be enjoined in said petition of any interference or threatened interference with any legal right of the plaintiff, for said petition seeks to show that the signing of the contract and the issuance of the warrants sought to be enjoined are in excess of the county of Live Oak's authority to create indebtedness, and that if signed and issued respectively will create no obligation on the county, and said county and said plaintiff will not be bound in any manner to pay the same, and that the petition does not show that the acts sought to be enjoined can possibly create any obligation against or do any damage to the county of Live Oak or to plaintiff.

"Second. Said petition shows no equity, in that it does not show any damage that can accrue to the county or to plaintiff, but, on the contrary, shows only that the effect of said contracts and said warrants will be, if signed and issued, that the bridge company and plain-

tiff will build said bridges for said county and accept their payment therefor the county's certificates of indebtedness which the plaintiff alleges are void, because the county has no right to issue them. That said petition shows only that said bridge company may build said bridges for Live Oak county free of charge, and against such action plaintiff shows no cause for the issuance of your honor's injunction.

"Third. And further excepting to said petition, these defendants say that it is insufficient in that it does not show upon its face that the plaintiff has a plain and adequate remedy at law, in that, if the indebtedness evidenced by said contract and warrants is in excess of said county's power to create a debt, the collection of any taxes from the plaintiff to pay said debt can be successfully resisted by him in an action at law, and the collection of said warrants against the county can be successfully resisted by said county in an action at law."

Appellant declined to amend, his cause was dismissed, and he has prosecuted this appeal.

[1] When analyzed, this case narrows down two propositions: First, as to whether a taxpayer can maintain a proceeding to enjoin the execution of a void debt on the part of the county; and, second, whether it is necessary for the bill to plead all the facts which would show that the debts already in existence against the county had been regularly created and were valid and subsisting obligations, at the time the debts complained of were sought to be created.

If the allegations of the petition are true, and sufficient to show that the county of Live Oak has exhausted its power to create obligations for road and bridge purposes, and that debts already in existence would require all of the 15-cent tax on the $100 taxable valuation, and no special tax for those purposes has been voted, then there would be a cause of action. It does not seem to be questioned that a taxpayer may maintain an injunction to prevent a wrongful application of public funds. And if he may prevent the misapplication of public funds after' those funds are in hand, we see no sound reason why he may not intervene to prevent the creation of a contract illegally, by means of which funds are to be obtained. Judge Brown says:

"The citizen need not wait until an unlawful contract has been consummated, but may prevent the wrongful act by injunction." City of Austin v. McCall, 95 Tex. 577, 68 S. W. 794, citing Crampton v. Zabriskie, 101 U. S. 609, 25 L. Ed. 1070.

"In that case Justice Field stated the law in this language: 'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of their process in such cases.' "

See, also, Rev. St. art. 4643, §§ 1, 3; Morris v. Cummings, 91 Tex. 618, 45 S. W. 383; City of Covington v. Dodds, 152 Ky. 617, 153 S. W. 964; Day Co. v. State, 68 Tex. 526, 4 S. W. 865; City of Brownwood v. Brown Telegraph & Telephone Co., 152 S. W. 709; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82.

In a note to the case of Pierce v. Hagans, 36 L. R. A. (N. S.) page 9, we find how this subject has been dealt with in other jurisdictions:

"An action was brought by a taxpayer for an injunction to restrain the officers from creating illegal debts in excess of revenue, and from levying and collecting taxes in payment thereof. It was held that an injunction would be granted. Bradford v. San Francisco, 112 Cal. 537, 44 Pac. 912. The court said: 'We conclude, then, that in a proper case municipal officers may, at the instance of a taxpayer, be restrained from contracting illegal debts, and from levying and collecting taxes for the payment thereof, and from enforcing the payment of such taxes.' "

See, also, the following cases cited in the same footnote: Springfield v. Edwards, 84 Ill. 626; Ballard v. Cerney, 83 Neb. 606, 120 N. W. 151; Pepper v. Philadelphia, 181 Pa. 566, 37 Atl. 579; City Water Supply Co. v. Ottumwa (C. C.) 120 Fed. 309; French v. Burlington, 42 Iowa, 614.

In the light of the foregoing authorities, we hold that a taxpayer may not only maintain a suit for injunction to restrain the wrongful use of public funds, but may do so to prevent the illegal acquisition of funds by attempting a tax levy in excess of the constitutional limit.

[2, 3] So, we pass to the consideration of the second question, as to whether it is necessary for the petition to show that the debts already in existence against the county had been regularly created and were valid subsisting obligations of the county at the time this contractual obligation was sought to be made.

Where a suit is brought seeking to obtain a judgment on an obligation of the county, there seems to be no doubt that it is essential that plaintiff plead and prove all the things requisite to make it a valid and binding obligation. McNeal v. City of Waco, 89 Tex. 88, 33 S. W. 322; Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691; Texas Water & Gas Co. v. City of Cleburne, 1 Tex. Civ. App. 580, 21 S. W. 393. And this would seem to require that, in addition to showing that it was created in a regular manner, it should also be shown that the obligation is within the constitutional limitation of taxation, and that a tax was provided to pay interest and create a sinking fund.

"The rule of pleading that the statements of a party are to be taken most strongly against himself is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief." Gillis v. Rosenheimer, 64 Tex. 246; Cotulla v. Burswell, 22 Tex. Civ. App. 329, 54 S. W. 614; City of Paris v. Sturgeon, 50 Tex. Civ. App. 522, 110 S. W. 459; 10 Ency. Plead. & Prac. pp. 923, 927; Schlinke v. De Witt County, 145 S. W. 665.

In line with the general rule of pleading in injunction matters, as above noted, we hold that it was necessary for the petition to show affirmatively the facts which would make the alleged prior indebtedness of the county valid subsisting claims against the county; and where those things do not appear the petition is subject to a general demurrer. It was not alleged in this case that the prior existing debts of the county had been created regularly by order of the court and a tax levy made to pay interest and create a sinking fund, or that same were to be paid in whole or in part out of current revenues on hand. Therefore the court did not err in sustaining the general demurrer.

If the petition had been good as against a general demurrer, the action of the trial court would not be upheld in sustaining the special exceptions, for reasons appearing in the first part of this opinion.

The judgment of the trial court is affirmed.