George W. BROWN, Jr., Petitioner,

v.

JEFFERSON COUNTY, Texas, et al.,
Respondents.

No. A–11256.

Supreme Court of Texas.

July 13, 1966.

Rehearing Denied Oct. 5, 1966.

Baker, Botts, Shepherd & Coates, William C. Harvin, with above firm, Houston, for petitioner.

W. C. Lindsey, Jr., Dist. Atty., Keith, Mehaffy & Weber, Beaumont, for respondents.

NORVELL, Justice.

We granted writ of error in this case primarily for the purpose of settling a point of dissent which arose in the Beaumont Court of Civil Appeals over the proper construction of this Court's holding in Texas & New Orleans R. R. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713 (1943). In considering the validity of

a "hold and save" clause in a contract executed by Jefferson County,[1] the majority of the Court of Civil Appeals construed our 1943 holding narrowly and affirmed the validity of the agreement. The dissenting Justice stated that he was unable to accept the construction placed by the majority upon the holding in the Galveston case. In his opinion, the "hold and save" clause was illegal.[2]

We are in general agreement with the majority and affirm the judgment of the Court of Civil Appeals.

### Statement of the Case

The opinion of the Court of Civil Appeals, 397 S.W.2d 241, contains a detailed statement of the history of the events and transactions which gave rise to this litigation. Accordingly, we set forth a summary taken from such opinion and refer to the same for a more detailed account of such occurrences.

The United States Congress in 1962 authorized and approved the Sabine-Neches Waterway Project.[3] In an effort to better the navigability of the Waterway and make passage of persons and vehicles over the same more convenient, the project plans provided for the construction of a fixed span bridge over the Waterway some 138 feet above water level at mean low tide. This proposed new bridge was to replace a thirty-five year old bascule-type bridge which was deemed inadequate and a hazard to modern navigation. The Congress directed that the project be carried out in accordance with the plans and recommendations contained in House Document No. 553.

Jefferson County is the sponsoring local interest of the project and as such was required to agree to a "hold and save" clause in its contract with the Federal authorities by said House Document No. 553. One resolution adopting a contract was passed in 1963, but as this agreement was thought to be defective it was repealed and a substitute agreement and resolution of the Commissioners' Court was adopted on July 16, 1965. This is the resolution which is presently under attack. Among other provisions the agreement and resolution contained the following:

"Whereas, the United States of America has undertaken or is about to undertake the replacement of the Pleasure Island Bridge at Port Arthur as a part of the improvement of the Sabine-Neches Waterway, as authorized by the River and Harbor Act of 1962, House Document No. 553, 87th Congress, Second Session,

"Whereas, said Act requires that prior to construction, local interests agree to provide certain specified items of local cooperation, * * *

---

1. "Jefferson County does hereby agree to:
   a. Hold and save the United States free from damages that may result from construction of the project."

2. The opinion of the Court of Civil Appeals is reported in 397 S.W.2d 241 under the style of All Persons Interested in or Affected by the Issuance of the Securities, etc. v. Jefferson County, Texas. The appeal was from a judgment in a consolidated cause,—one being a proceeding brought by Jefferson County under the provisions of Article 717m, Vernon's Ann.Tex.Stats. to validate a bond issue designated as "Jefferson County Bridge Bonds, Series 1965", the other

being a taxpayer's suit brought by George W. Brown, Jr. seeking a declaratory judgment that the "hold and save" clause in the Jefferson County's contract with the Federal authorities is void, for injunctive relief, etc. The points contained in Brown's application for writ of error restrict his attack to the "hold and save" clause. The members of the Court of Civil Appeals were agreed that the Jefferson County Bridge Bonds, Series 1965, are valid securities and such holding is not attacked by the application for writ of error.

3. River and Harbor Act of 1962, 76 Stat. 1173, 1175.

"Now therefore, in consideration of the premises, be it ordered by the Commissioners Court of Jefferson County, Texas, that the said Jefferson County, does hereby agree to:

"a. Hold and save the United States free from damages that may result from construction of the project. During each year while there is any liability by reason of the agreement contained in this subsection of this resolution, including the calendar year 1965, the Commissioners' Court of said County shall compute and ascertain the rate and amount of ad valorem tax, based on the latest approved tax rolls of said County, with full allowances being made for tax delinquencies and costs of tax collection, which will be sufficeint to raise and produce the money required to pay any sums which may be or become due during any such year, in no instance to be less than two (2%) per cent of such obligation, together with all interest thereon, because of the obligation herein assumed. Said rate and amount of ad valorem tax is hereby ordered to be levied and is hereby levied against all taxable property in said County for each year while any liability exists by reason of the obligation undertaken by this subsection of this resolution, and said ad valorem tax shall be assessed and collected each such year until all of the obligations herein incurred shall have been discharged and all liability hereunder discharged."

## Opinion

Article 11, § 7 of the Texas Constitution, Vernon's Ann.St., provides, in part, that:

"[N]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; * * *."

In Texas & New Orleans R. R. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713 (1943), it was held upon authority of McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322 (1895) and Stevenson v. Blake, 131 Tex. 103, 113 S.W.2d 525 (1938), that an indemnity agreement was a "debt" within the meaning of Article 11, § 7 of the Constitution. In this proceeding, Jefferson County does not request a re-examination of this holding of the Galveston County case, but insists that the 1965 order of its Commissioners Court complies with the requirements therein set forth. On the other hand, Brown suing as a taxpayer contends that an indemnity agreement is uncertain in amount and cannot be funded and is thus proscribed by said Article 11, § 7.

In the Galveston County case it appears that three railway companies and an interurban company made a contract for the construction of a causeway and a drawbridge to connect Galveston Island with the mainland. Part of the causeway was to be occupied by a public road and the County was to pay a portion of the construction costs. The railway and interurban companies were to have a 999 year lease on that portion of the causeway to be occupied by them. A drawbridge was located near the middle of the causeway which could be lifted to permit the passage of sea going vessels. The agreement between the parties provided that the drawbridge was to be maintained, operated and repaired by the railway companies but the costs were to be prorated between the railway companies, the interurban company and the County. The contract then contained the highly unusual provision that the employees of the railway companies engaged in operating the drawbridge should be deemed and treated as joint employees of the parties to the agreement, and that "neither the railway companies nor the interurban company shall be liable for any injury to person or damage to property which shall occur in connection with the use or attempted use of the drawbridge,

or in the draw space, when the draw-bridge may be open, when the person injured or the property damaged shall be in the course of travel or transportation over the county road, and the county will indemnify and save harmless each of the other parties hereto from any such liability."

The holding in the Galveston County case that the contract there involved constituted a "debt" within the constitutional meaning settled the case for, admittedly, there was no provision in the contract which could be remotely construed as an attempt to comply with the provisions of Article 11, § 7 of the Constitution. It should be noted, however, that this Court in holding that the County's indemnity obligation under the contract constituted a "debt" within the constitutional meaning employed a construction of the term which gives to it a much broader meaning than that of being an obligation presently due and performable.

Jefferson County's position here is that as its amended resolution, above set out in part, contains provisions for levying and collecting a tax to pay the interest upon and create a sinking fund for the retirement of the "debt" created by the resolution, it has complied with the holding of the Galveston County case.

Petitioner on the other hand asserts that the obligation assumed or "debt" created by the "hold and save" clause of the resolution is invalid because it is uncertain and unlimited in amount and cannot be funded. This position was accepted by the dissenting Justice on the Court of Civil Appeals.

■ We are in substantial agreement with the majority of the intermediate court. The Galveston case is to be restricted to its essential holdings, namely, that an indemnity agreement is a "debt" within the constitutional sense, and that, as a corollary thereto, provision must be made for the payment of any interest that may accrue thereon and for the retirement of the ob-

ligation. This was done in the Jefferson County resolution. There is language in the opinion of this Court in the Galveston County case which is highly critical of the uncertain and admittedly improvident contract made by Galveston County which sought to saddle the County for almost a millenium with an uncertain liability which could arise out of the operation of a bridge over which the County had no effective control. The opinion should not, however, be construed as condemning any and all indemnity contracts which a county might enter into in carrying out its legitimate functions. In this case, it appears that under the agreement between Jefferson County and the United States government, the County is to assume all obligations of ownership, operation and maintenance of the completed replacement bridge. This is a legitimate county function. The federal government under the Act of Congress is to pay three-fourths of the cost of the bridge, but in accordance with established federal policy evidenced by House Document No. 553, the sponsoring local interest (Jefferson County) is required to "hold and save the United States free from damage that may result from construction of the project." This "hold and save" clause is common to inumerable agreements between local sponsoring interests and the federal government relating to improvements of rivers and harbors and we see no valid legal objection to a county's executing such an agreement with the federal authorities as a sponsoring local interest. The bridge when completed will be part of the county's road system and under its control. The concept of an uncertain indemnity liability as a "debt" under the usual meaning of the term is somewhat unrealistic. Some liability in the future may arise from the construction of the bridge. Likewise, some liability may arise from the operation of the bridge after it has been turned over to county control. A presently unforeseen occurrence of the future may require extensive repairs to the bridge and the necessary expenditures therefor might exceed the available funds for current expenses

during a particular year and thus require a funding of the sum necessary to repair the structure and the voting of a bond issue. The question of whether such funding or the funding of an obligation to indemnify for damages from the construction of the bridge, exceeds the permissible tax rate may arise in the future, but it is not presently before us. See, Article 8, § 9, Constitution of Texas.

■ Article 11, § 7 of the Texas Constitution does not require that a definite tax rate be set for each year the "debt" is to be outstanding. Tax rates vary with assessed valuations, governmental needs and the like and are set on a year to year basis. All the constitutional provision requires is that a "sufficient" tax be levied. Bassett v. City of El Paso, 88 Tex. 168, 30 S.W. 893, 895 (1895); Mitchell County v. City National Bank, 91 Tex. 361, 43 S.W. 880 (1898); City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923). Until some liability ascertainable in amount arises, no money would need be collected from the county's tax resources. In fact, as indicated in Arroyo Colorado Navigation District v. Kipp, 261 S.W.2d 189 (Tex.Civ. App. 1953, no wr. hist.), no presently payable obligation can arise against a county or other local sponsoring interest under a "hold and save" clause which is a provision for indemnity, until liability against the United States has first been fixed and established. See generally 42 C.J.S. Indemnity § 14c, p. 589; 27 Am.Jur. 471, Indemnity, § 24.

In essence it is petitioner's argument that, "Article XI, Section 7, requires that obligations incurred be funded by a tax 'sufficient' to pay the interest and provide a sinking fund for the obligation incurred. The obligation being unlimited, and the taxing power being limited, the County simply cannot validly meet the constitutional requirements of funding, and thus cannot validly incur this unlimited obligation." In essence the argument is that

because there is a possibility that an obligation due the United States may arise in the future under the "hold and save" clause of the contract which may be beyond the ability of the County to pay because of the constitutional restrictions of its taxing power, the agreement must be held invalid.

In reply to this argument, Jefferson County maintains that presumptively the resolution adopted by its Commissioners' Court is valid, and that the mere showing of the possibility that the discharge of a contractual obligation may prove to be beyond the tax resources of the County is an insufficient basis for declaring the contract void when adopted. We are cited to an A.L.R. annotation which states that:

"According to most of the authorities in taxpayers' actions attacking the validity of an obligation incurred or proposed to be incurred by a public body, on the ground that such obligation is one in excess of the lawful debt limitation, the plaintiff taxpayers have the burden of proving that the debt limitation is or would be violated by the obligation in question." 16 A.L.R.2d 515. See also, Tullos v. Church, 171 S.W. 803 (Tex. Civ.App., 1914, no wr. hist.).

■ We are in agreement with the County's position. The "hold and save" agreement herein involved will not necessarily result in the assertion of a claim against the County. If a claim be asserted, it may be one that could be settled from the current revenues of a particular year, or it may be one which may be funded and paid off without violating any constitutional debt limit or taxing restrictions applicable to counties. If such obligation may be so discharged, the County has bound itself to do so. It has, if necessary, bound itself to levy a "sufficient tax". There remains only the possibility that an obligation may arise under the indemnity contract which the County could not fund and discharge because of the taxing restrictions contained

in Article 8, § 9 of the Constitution.[4] Necessarily, the agreement to levy a "sufficient tax" from year to year is subject to constitutionally imposed restrictions upon the taxing power and when the levy of a "sufficient tax" for any particular year would exceed the tax limit, no county could be forced to levy a tax in excess of the constitutional limit. The outside possibility that this latter situation might arise will not operate to invalidate the "hold and save" agreement. There is always a possibility that a municipal taxing organization will incur obligations that may exceed its permissible taxing power in future years. See, 11 U.S.C.A. §§ 401–404, Articles 1024a and 1024b, Vernon's Ann.Tex.Stats. Cf. United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1937), Getz v. Edinburg Consolidated Independent School District, 101 F.2d 734 (5th Cir. 1939), Ex parte York County Natural Gas Authority, 238 F.Supp. 964 (Western District, South Carolina, 1965). However, legitimate county contracts should not be declared void upon possibilities. When the order or resolution creating the obligation complies with the provisions of Article 11, § 7 of the Constitution, it should be stricken down only when it is made to appear that the limited tax resources of the municipality are insufficient at such time to discharge the obligation. Cf. City of Vernon v. Mont-gomery, 265 S.W. 188 (Tex.Civ.App. 1924, wr. ref.), Anderson v. Parsley, 37 S.W.2d 358, l. c. 366 (Tex.Civ.App. 1931, wr. ref.), Tullos v. Church, 171 S.W. 803 (Tex.Civ. App. 1914, no writ).

The judgment of the Court of Civil Appeals is affirmed.

GRIFFIN and GREENHILL, JJ., dissenting.

## DISSENTING OPINION

GRIFFIN, Justice.

I cannot agree with the majority opinion herein.

To my mind this case is controlled by the case of Texas & New Orleans R. R. Co. v. Galveston County, 141 Tex. 34, 169 S.W. 2d 713 (1943). The attempted distinctions between this case and the Galveston County case are neither logical nor valid.

I would hold the order in question illegal and void and violative of the Constitution as set out in the dissenting opinion in the Court of Civil Appeals.

GREENHILL, J., joins in this dissent.

4. Article 8, § 9 of the Constitution provides in part that:
"[N]o county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the Amendment September 25, 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five (25) cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; provided, however, that the Commissioners Court in any county may re-allocate the foregoing county taxes by changing the rates provided for any of the foregoing purposes by either increasing or decreasing the same, but in no event shall the total of said foregoing county taxes exceed eighty (80) cents on the one hundred dollars valuation, in any one year; * * * and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax paying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen (15) cents on the one hundred dollars valuation of the property subject to taxation in such county. * * *"