

# THE ATTORNEY GENERAL
# OF TEXAS

March 11, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Elizabeth C. Jandt
Guadalupe County Attorney
105-A North Austin
Seguin, Texas    78155

Opinion No.   JM-642

Re:  The authority of the Guadalupe Valley Hospital to borrow funds to purchase equipment and renovate the hospital under article 4494i, V.T.C.S.

Dear Ms. Jandt:

Article 4494i, V.T.C.S., authorizes the joint establishment and operation of hospitals by counties and cities or towns. You ask whether an article 4494i hospital may borrow money to purchase equipment and to renovate the hospital when it is reasonably anticipated that the loan can be repaid over a period of five years from funds generated by the operation of the hospital. You indicate that the hospital does not seek to raise these funds through the issuance of revenue bonds because the cost of issuance for the relatively small amount needed is not economically advantageous in light of the fact that the hospital anticipates that a loan can be repaid from funds generated by the operation of the hospital. Your question raises three related issues: (1) whether article 4494i contains statutory authority for a joint city-county hospital to borrow money for hospital improvements, (2) whether a county and city may delegate to an article 4494i hospital's board of managers the authority to borrow money, and (3) whether the Texas Constitution's prohibition on certain "debts" prohibits a city-county hospital from borrowing money in this manner.

The nature of a joint city-county hospital controls the scope of its powers. Article 4494i authorizes the creation of a joint city-county hospital and authorizes any county and city or town to delegate to the hospital's board of managers the authority to establish and operate the hospital. Secs. 1, 4, 7. Article 4494i does not contemplate the creation of a distinct political subdivision. See Sec. 4 (board's actions taken as though such action had been taken by county and city); see also Attorney General Opinion JM-552 (1986) (joint city-county hospital board organized under article 4494i-1 is joint agent of the county and the city). A joint city-county hospital can hold no powers greater than those held by the county or the city which created the hospital. Conversely, a joint city-county hospital also holds powers held by the county and the city. See Attorney General Opinion Nos. JM-274, JM-220 (1984). Counties and cities possess only

the powers granted expressly or by necessary implication in the Texas Constitution and statutes. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948) (counties); City of West Lake Hills v. Westwood Legal Defense Fund, 598 S.W.2d 681 (Tex. Civ. App. - Waco 1980, no writ) (general law cities); cf. Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex. 1975) (home rule city has plenary powers, controlled primarily by the city's charter). This rule applies to the creation of debt. See Brown v. Jefferson County, 406 S.W.2d 185 (Tex. 1966) (counties); Citizens' Bank v. City of Terrell, 14 S.W. 1003 (Tex. 1890) (cities).

Article 4494i does not expressly authorize a joint city-county hospital to borrow money to purchase equipment and to renovate the hospital. Section 1 of article 4494i provides, in part:

> Such cities or towns and counties that have heretofore issued and sold bonds for the specific purpose of jointly establishing, erecting, equipping, maintaining and operating such joint county-city hospital may finance such hospital or hospitals out of general revenues and are each, respectively, hereby authorized to levy and collect a tax, not to exceed Ten (10) Cents per one hundred dollar valuation on the property subject to taxes therein, for such purposes.

This section provides the only express authority to incur debt in financing a joint city-county hospital. As indicated, however, the hospital does not seek to raise these funds through the issuance of revenue bonds because the cost of issuance for the relatively small amount needed is not economically advantageous in light of the fact that the hospital anticipates that a loan can be repaid from funds generated by the operation of the hospital.

Because article 4494i does not expressly authorize a joint city-county hospital to borrow money for hospital improvements, the dispositive issue is whether such power may be implied from the grant of authority to establish and equip a hospital and to issue bonds for such purposes. As a general rule, when a law confers a power on a governmental entity, the power carries with it the implied authority to do all things which are necessary to effect the power granted. Terrell v. Sparks, 135 S.W. 519 (Tex. 1911). The authority to incur debt for purposes which are not authorized or to incur debt in excess of the limits on the amount of debt authorized or to incur debt without observing prescribed procedures for incurring debt clearly cannot be implied. Citizens' Bank v. City of Terrell, 14 S.W. 1003, 1004 (Tex. 1890); see also Foster v. City of Waco, 255 S.W. 1104, 1105 (Tex. 1923) (limits in city charter). Additionally, in Lasater v. Lopez, 217 S.W. 373, 376 (Tex. 1919), the Texas Supreme Court stated that the power to issue negotiable instruments must be express, it cannot be implied. See also First Bank & Trust Co., Booker, v. Dumas Independent School District, Dumas, 527 S.W.2d 499 (Tex. Civ. App. -

Waco 1975, writ ref'd n.r.e.) (regarding nonnegotiable nature of government warrants and promissory notes).

In Lasater v. Lopez, supra, the Texas Supreme Court addressed a question about the power to incur debt which is similar to the question presented by article 4494i. In Lasater v. Lopez, county taxpayers sought the judicial invalidation of a series of interest-bearing county warrants issued for public road improvements. The act at issue expressly authorized the issuance of bonds but did not expressly authorize any alternate method of financing. The court framed the issue as whether the act's grant of authority for the issuance of negotiable county bonds for public road purposes negated any authority to issue nonnegotiable county warrants for the same purpose when a particular road improvement could be accomplished by that means. Lasater v. Lopez, 217 S.W. at 376.

In Lasater v. Lopez, the court determined that the county had the authority to issue nonnegotiable warrants in lieu of bonds. The court stated that

> [i]t could not have been absent from the mind of the Legislature in the passage of the Act of 1903 that in some counties it might be possible for the Commissioners' Court to accomplish the desired road improvement within the limits of the county's general power of taxation for such purpose by a smaller expenditure than is ordinarily in view where a bond issue is proposed, and hence without the need of resorting to bonds. The authority in such instances to make lawful use of the county's credit through the issuance of county warrants cannot be denied because of the Act of 1903, unless it is to be held that the effect of that act is to absolutely require the issuance of bonds in all cases by all counties where it is necessary to contract a debt of extended maturity for road improvements. If the authority to issue bonds granted by the Act of 1903 does not exclude the power in such cases to make use of a county's credit for road improvements by all other means, the authority, where necessary, to use it for that purpose through the issuance of warrants still remains in the Commissioners' Courts and may be lawfully exercised. (Emphasis added).

217 S.W. at 377. The court's decision was premised on its assumption that the county's authority to incur debt through nonnegotiable warrants for public road improvements was implicit in the original grant of authority to levy taxes to build and improve roads. See 217 S.W. at 375-76.

Article 4494i provides express authority to maintain and equip a joint city-county hospital. Section 1 of article 4494i authorizes counties and cities to levy a special tax and to use general revenues to fund a joint city-county hospital. As indicated, section 1 expressly authorizes the issuance of bonds. Further, section 7 provides for "the issuance of bonds or other obligations, or by appropriations from other funds of such county and city or town." This language indicates that the legislature intended that the financing of city-county hospitals is not limited to the issuance of bonds. Prior Attorney General Opinions indicate that article 4494i authorizes forms of debt other than bonds. See Attorney General Opinions V-904, V-779 (1949); see also Attorney General Opinion V-683 (1948). Consequently, article 4494i contains the authority necessary for a county and city to borrow money for hospital improvements; it need not resort to bonds in all cases. This opinion applies only to a hospital organized under article 4494i.

The second issue raised by your request is whether a county and city may delegate to an article 4494i hospital's board of managers the authority to borrow money for hospital improvements. Section 1 of article 4494i authorizes the county and city to delegate, by resolution or other appropriate action, to the hospital's board of managers "full and complete authority to establish, erect, equip, maintain and operate" a joint city-county hospital. This opinion assumes that the full authority that may be delegated to the board of managers under article 4494i has been delegated through appropriate actions of the county and city. See generally Attorney General Opinion WW-1332 (1962). You suggest that the county and city may delegate authority to the board of managers to borrow money for hospital improvements simply by approving budgets submitted by the board and that the county and city are "obligated" to approve expenditures which the board of managers deems necessary, including an expenditure involving a bank loan. This is not an accurate construction of the powers which may be delegated under article 4494i.

Several sections of article 4494i are relevant to your inquiry. Section 4 of article 4494i provides that the joint board of managers

> shall have full and complete authority to enter into any contract connected with or incident to the establishment, erection, equipping, maintaining or operating such hospital or hospitals, and in this connection shall have authority to disburse and pay out all funds set aside by such county and such city or town for purposes connected with such hospital or hospitals, and such action by such city or town as though such action had been taken by the Commissioners Court of such county or governing body of such city or town. (Emphasis added).

Section 7 of article 4494i provides:

> In connection with the erection and equipping of such hospital or hospitals said Board of Managers shall have <u>the authority to determine the manner of expending any funds that may have been provided by such county and such city or town for such purpose, whether by the issuance of bonds or other obligations, or by appropriations from other funds of such county and city or town,</u> it being the intention by this Act to grant to such Boards the complete authority to manage and control all matters affecting such hospitals, <u>reserving to such county and city or town the right only to appoint members to such Board of Managers and to approve the annual budget hereinabove provided for.</u>   (Emphasis added).

Although both sections 4 and 7 provide that the county and city may authorize the board to exercise broad authority with regard to <u>operating</u> the hospital, the board's authority is referenced to funds provided by the county and city. The last sentence in section 7, which reserves to the county and city "only" the rights of appointment power and budget approval, must be read in light of all of the language in article 4494i.

Section 5 of article 4494i provides:

> Once each year such Board of Managers shall prepare and present to such Commissioners Court and the governing body of such city or town a complete financial statement of the financial status of such hospital or hospitals, and shall submit therewith a proposed budget of the anticipated financial needs of such hospital or hospitals for the ensuing year. <u>On the basis of such financial statement and budget the Commissioners Court of such county and the governing body of such city or town shall appropriate or set aside for the use of such Board of Managers in the operation of such hospital or hospitals the amount of money which seems proper and necessary for such purpose.</u>   (Emphasis added).

This section does not mandate that the county and the city shall approve any amount of funding which the board deems necessary.

Although the county and city's authority to approve specific hospital expenditures may be purely ministerial, their authority to incur debt to fund the hospital is discretionary. In <u>Commissioners Court of Harris County v. Fullerton</u>, 596 S.W.2d 572 (Tex. Civ. App. - Houston [1st Dist.] 1980, writ ref'd n.r.e.), the court reviewed a

commissioners court's refusal to approve certain items in the county auditor's budget. The statutory language at issue in Fullerton is similar to that in article 4494i. See 596 S.W.2d at 575. The court determined that the duty of a commissioners court to approve specific items of equipment requested by the county auditor is ministerial; the commissioners court must take appropriate legal steps to procure such items unless it finds the county auditor abused his discretion. 596 S.W.2d at 576. The item at issue, however, fell within the scope of the county auditor's equipment budget. The court noted that the legislature granted the commissioners court the power to determine the reasonableness of "the monetary outlay necessary to foster the budget's approval."

Similar considerations apply to the case at hand. The board of managers of an article 4494i hospital has "complete authority" over the actual expenditures made for hospital improvements. On the other hand, article 4494i places the authority to levy taxes and incur debt in the county and city. In Attorney General Opinion V-904 (1949), this office indicated that the authority to incur debt to finance hospital improvements under article 4494i rests with the county rather than with the board of managers. The county and city have discretion over whether to borrow money to finance improvements for an article 4494i hospital. Consequently, although the county and city may approve the purchase of equipment and hospital improvements in the budget process, they must take separate, specific action to approve a loan for such purposes.

The third and final issue raised by your request is whether the Texas Constitution's prohibition on certain debts prohibits a city-county hospital from borrowing money for equipment and improvements through a bank loan to be repaid within five years. Article XI, section 7, of the Texas Constitution provides, in part, that

> no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two percent (2%) as a sinking fund. . . .

See also Tex. Const. art. XI, §5.

You indicate that the hospital reasonably anticipates that the loan can be repaid from funds generated by the operation of the hospital. An obligation will not create "debt" within the meaning of article XI, section 7, when the transaction itself generates enough revenue to cover the obligation of the governmental unit. Bache Halsey Stuart Shields, Inc. v. University of Houston, 638 S.W.2d 920 (Tex. App. - Houston [1st Dist.] 1982, writ ref'd n.r.e.); see Texas Public Building Authority v. Mattox, 686 S.W.2d 924 (Tex. 1985) (construing Tex. Const. art. III, §49); City of Nederland v. Callihan, 299 S.W.2d 380 (Tex. Civ. App. - Beaumont 1957, writ ref'd n.r.e.)

(construing Tex. Const. art. XI, §5).  In the present case, however, it does not appear that the loan is repayable solely out of revenues generated by the equipment to be purchased or the renovations to be made.

Texas courts uphold "debt" transactions against constitutional challenge under article XI, section 7, when current revenues or revenues which are generated by the transaction and which are within county or city control are sufficient to cover the "debt."  See Brown v. Jefferson County, 406 S.W.2d 185, 189 (Tex. 1966).  Case law has not, however, always established a clear rule under article XI, section 7.  In McNeill v. City of Waco, 33 S.W. 322 (Tex. 1895), the Texas Supreme Court held that no debt existed for purposes of article XI, section 7, when the city reasonably anticipates that the obligation can be satisfied out of current revenues or out of "some fund then within the immediate control of the corporation."  33 S.W. at 324.  The McNeill court focused on "providing" for the retirement of the debt; if the city anticipates in good faith at the time a "debt" is made that a tax is not necessary to retire the "debt," the city is not required by article XI, section 7, to levy a tax.  33 S.W. at 323-24.  The court did, however, suggest that there should exist,

> at the date of the contract, a fund in the treasury, legally applicable thereto, out of which the parties contemplated that such claim should be paid.

33 S.W. at 324.

Controversies over the existence of an unconstitutional "debt" revolve around the requirement that a fund actually exist at the time the "debt" is made.  The supreme court adopted a 1938 Commission of Appeals decision which indicates that the parties to the debt must contemplate that the entire obligation could be satisfied out of current funds or revenues.  See Stevenson v. Blake, 113 S.W.2d 525, 527 (Tex. 1938).  Similarly, in the Commission of Appeals decision in T & N.O.R.R. Co. v. Galveston County, 169 S.W.2d 713 (Tex. 1943), the court struck down the part of an agreement between a county and three railway companies and an interurban company in which the county agreed to indemnify the companies for liability that might arise in the future from the use of a jointly-constructed drawbridge.  The court held that the parties could not have reasonably anticipated that this "debt" could be satisfied out of current revenues for the year or out of some fund then within the immediate control of the county.  169 S.W.2d at 715.  The Texas Supreme Court, however, qualified these two commission of appeals holdings.

In Brown v. Jefferson County, supra, the supreme court shifted the focus of the article XI, section 7, inquiry from the current existence of funds to whether necessary funds are reasonably anticipated from sources within the control of the county.  See 406 S.W.2d at 189.  The court upheld a contract in which the county agreed to assume uncertain indemnity liability, to "hold and save" harmless

the federal government for the ownership, operation, and maintenance of a federally-funded county bridge. The fact that the county had control over the bridge influenced the court. 406 S.W.2d at 188.

A Jefferson County taxpayer alleged that article XI, section 7, requires that such obligations be funded by a specific tax. The court rejected this argument:

> Article 11, §7 of the Texas Constitution does not require that a definite tax rate be set for each year the 'debt' is to be outstanding. Tax rates vary with assessed valuations, governmental needs and the like and are set on a year to year basis. All the constitutional provision requires is that a 'sufficient' tax be levied. (Citations omitted). Until some liability ascertainable in amount arises, no money would need be collected from the county's tax resources. (Emphasis added).

406 S.W.2d at 189. An obligation will be stricken under article XI, section 7, "only when it is made to appear that the limited tax resources of the municipality are insufficient when the obligation is made to discharge the obligation." 406 S.W.2d at 190.

Despite the supreme court's decision in Brown v. Jefferson County, some courts have invalidated "debts" on the basis that they could not be paid out of actually available current revenues. See City of Wichita Falls v. Kemp Public Library Board of Trustees, 593 S.W.2d 834 (Tex. Civ. App. - Fort Worth 1980, writ ref'd n.r.e.); Brodhead v. City of Forney, 538 S.W.2d 873 (Tex. Civ. App. - Waco 1976, writ ref'd n.r.e.). This narrow rationale, however, is not mandated by the supreme court's decision in Brown v. Jefferson County. For example, in City of Wichita Falls v. Kemp Public Library, there existed a question of control over funds to repay "debt." In Brodhead v. Forney, the funds necessary to repay the "debt" could not be reasonably anticipated.

The case you present with regard to a joint city-county hospital established under article 4494i fits within the Texas Supreme Court's decision in Brown v. Jefferson County. You indicate that the hospital reasonably anticipates that a loan for hospital equipment and improvements can be repaid from revenues generated by the hospital. The county and city have taxing authority under article 4494i and control over hospital revenues through the budget approval process. Because hospital revenues have been sufficient to operate the hospital, the county and city have not found it necessary to levy taxes for the support of the hospital. Additionally, it has not been shown that the uncommitted tax resources for the year available to the county and city for hospital purposes, are not reasonably anticipated to be sufficient to discharge the obligation in question if it should become necessary to do so. As indicated, it is not necessary that a fund exist or a tax actually be levied. The amount which the county and

city in good faith believe could be raised through a combination of hospital revenues, taxing power under article 4494i, and other taxing authority available for hospital purposes is a fact question which cannot be resolved in the opinion process. Moreover, the burden of proof must be shouldered by the party that challenges an obligation to show that it exceeds the constitutional "debt" limit. Brown v. Jefferson County, 406 S.W.2d at 189. Consequently, under Brown v. Jefferson County, the Texas courts would not invalidate a "debt" for equipment and improvements for a joint city-county hospital when it is reasonably anticipated that the obligation can be repaid from revenues generated by the hospital and the obligation has not been shown to exceed the county and city's uncommitted taxing authority for hospital purposes.

## SUMMARY

A city and county with a joint hospital organized pursuant to article 4494i, V.T.C.S., hold the authority to borrow money to purchase equipment and to renovate the hospital when it is reasonably anticipated that the loan can be repaid from funds generated by the operation of the hospital and it has not been shown that the amount of the loan is not within the amount which the county and city in good faith believe could be raised through a combination of hospital revenues, taxing power under article 4494i, and other taxing authority available for hospital purposes. This opinion is limited to an article 4494i hospital. The county and city which establish an article 4494i hospital have discretion over whether to borrow money and must take specific action to approve a loan for hospital improvements.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General