

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

February 2, 1998

The Honorable Bruce Isaacks
Criminal District Attorney
Carroll Courts Building, 5th Floor
P.O. Box 2344
Denton, Texas 76202

Opinion No. DM-467

Re: Whether a hold and save harmless provision that requires a county to indemnify another party for damages creates a debt within the meaning of article XI, section 7 of the Texas Constitution (RQ-1001)

Dear Mr. Isaacks:

On behalf of Denton County, you ask whether article XI, section 7 of the Texas Constitution precludes a county from entering into a contract with the United States Army Corps of Engineers (the "corps") that would require the county to hold and save the corps harmless from liability. The scope of the hold and save harmless provision is unclear. We conclude that to the extent it requires the county to indemnify the corps for damages arising from acts of the corps, the hold and save harmless provision creates a debt within the meaning of article XI, section 7 and is therefore an obligation that the county may not undertake without taking certain steps. We do not resolve whether the hold and save harmless provision creates a debt to the extent it requires the county to indemnify the corps only for damages arising from acts of the county and does not expand the county's liability beyond its liability under existing law.

You explain that the corps owns Lake Lewisville[1] in the county and in previous years has entered into a "plan of operation" with the county whereby the county has agreed to provide additional law enforcement personnel on the lake during the summer months.[2] In 1996, unlike prior

---

[1]*See* Gov't Code ch. 2204, subch. F (state's consent to federal acquisition of land for flood control in Trinity River watershed). The state has retained concurrent jurisdiction over this land for certain purposes. *See id.* § 2204.505 ("This state retains concurrent jurisdiction with the United States in and over acquired land so that civil process in all cases and criminal process issued under the authority of this state against a person charged with the commission of a crime in or outside of the territory of the land may be executed on that land in the same manner as if this subchapter did not exist.").

[2]We assume for purposes of this opinion that the county is authorized to enter into an agreement of this kind. The legislature has enacted statutes expressly authorizing a county to enter into contracts regarding the provision of law enforcement services with other local governments, *see, e.g.,* Gov't Code ch. 791 (Interlocal Cooperation Act); Attorney General Opinion H-296 (1974) (concluding that statutory predecessor to Gov't Code ch. 791 authorized local governments to contract to provide cooperative law enforcement services); Local Gov't Code ch. 362, or even a "nongovernmental association," *see* Local Gov't Code ch. 351, subch. D (purporting to authorize commissioners court to contract with nongovernmental association for provision of law enforcement services by the county). *But see* Attorney General Opinions JM-509 (1986) (concluding that statutory predecessor to Local Gov't Code ch. 351, subch.

(continued...)

years, the corps asked the county to execute, in addition to a plan of operation, a "cooperative agreement" containing the following provision:

> Release of Claims. The Cooperator [Denton County] agrees to hold and save the Corps, its officers, agents or employees, harmless from liability of any nature or kind, for or on account of any claims for damages that may arise during the performance of the law enforcement services by the Cooperator under this agreement.

Proposed Cooperative Agreement Between the United States of America and Denton County, Texas for the Provision of Additional Law Enforcement Services, (Agreement No. COOPLAW-96 DENTO) art. 8 (1996) (referred to as "the release" or "the hold and save harmless provision").

The scope of the release is unclear. We have received a letter[3] from the corps contending that the hold and save harmless provision does not create a debt within the meaning of article XI, section 7 because the provision would not require the county to indemnify the United States for acts of negligence of the corps, but rather only for acts of negligence of the county:

> Denton County is only saving and holding the United States harmless from liability associated with acts of negligence of employees of Denton County during their performance of law enforcement activities while at Lewisville Lake. The United States does not intend for Denton County to indemnify the United States for acts of negligence of the United States. All Denton County is being asked to do is take financial responsibility for its own acts of negligence in carrying out its obligations under the agreement.
>
> . . . Denton County assuming financial responsibility for its own acts of negligence does not create an unconstitutional debt. Denton County is only agreeing to take responsibility for potential legal liability that, in general, could arise in association with the day-to-day provision of law enforcement services and other governmental services to the public. As a matter of law,

---

[2](...continued)
D unconstitutionally attempts to delegate legislative power to private entity), JM-57 (1983) (county may not contract away sheriff's discretionary duty regarding deployment of peace officers to private entity). We are not aware of any statute expressly authorizing a county to contract to provide law enforcement services to the United States.

[3]See Letter from Joel R. Trautmann, Deputy District Engineer, Fort Worth District, Corps of Engineers, United States Department of the Army, to Mary R. Crouter, Assistant Attorney General, Opinion Committee, Office of the Texas Attorney General (July 15, 1997).

> Denton County can be held responsible (within the statutory limits of the Texas Tort Claims Act) for damages that may arise as the result of the negligent acts of County employees in the course of providing services to the public. The proposed clause does not create any financial obligation that Denton County does not already have as a matter of law.[4]

The county, on the other hand, appears to construe the provision more broadly to obligate the county "to hold the Corps harmless *from liability of any nature or kind* for damages that might arise from the performance of law enforcement services by the County."[5] Because this office does not construe contracts, we cannot resolve this ambiguity. Rather, we consider both the corps' narrow and the county's broad reading in addressing whether the release creates a debt under article XI, section 7.[6]

> Article XI, section 7 provides in pertinent part as follows:

> [N]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two percent (2%) as a sinking fund . . . .

Two Texas Supreme Court cases address whether a release creates a debt for purposes of article XI, section 7.

> In *Texas & New Orleans Railroad v. Galveston County*, 169 S.W.2d 713 (Tex. 1943), the court concluded that a hold and save harmless provision created a debt for purposes of this constitutional limitation. In 1908, Galveston County and several private railway companies entered into a contract to construct a causeway and a drawbridge. The county was to construct the project with both county and private funds. The private parties and their assignees were to enjoy a 999-year lease on the part of the causeway not used by the county road. Across the causeway was a

---

[4]*Id.*

[5]Letter from Carmen Rivera-Worley, Assistant District Attorney, Denton Civil Division, to Kenneth Howell, Reservoir Manager, Fort Worth District, Corps of Engineers, United States Department of the Army, (Mar. 20, 1996) (emphasis added).

[6]You are concerned about the debt issue; you do not ask whether the county is authorized to enter into the release in the first place. We note that in 1942, a Texas appellate court ruled that a county was not authorized to agree to indemnify a railroad company against certain losses. *See Galveston, H. & S.A. Ry. v. Uvalde County*, 167 S.W.2d 305 (Tex. Civ. App.--San Antonio 1942, writ ref'd w.o.m.). In a 1958 opinion relying on that ruling, this office concluded that a soil conservation district was not authorized to indemnify a third party for damage caused by district employees. *See* Attorney General Opinion WW-423 (1958) at 3-4 (citing *Uvalde County*, 167 S.W.2d 305). The supreme court's subsequent opinion in *Brown v. Jefferson County*, 406 S.W.2d 185 (Tex. 1966), however, did not question the authority of a county to enter into an indemnity agreement. *See infra* pp. 4-5 (discussing *Jefferson County*); *see also County of Ector v. City of Odessa*, 492 S.W.2d 360, 362 (Tex. Civ. App.--El Paso 1973, no writ) (assuming county authorized to enter into indemnity agreement); Attorney General Opinion JM-908 (1988) at 6-7 & n.2 (suggesting that *Uvalde County* holding that county may not agree to indemnify corporation for risks has been undermined by *Jefferson County*).

drawbridge for both the county road and the railway tracks. The railway companies were to maintain, repair, and operate the drawbridge, prorating the costs between the parties to the contract, including the county. The railway company employees operating the drawbridge were deemed to be joint employees of the parties to the contract. *See id.* at 714.

The contract contained a provision pursuant to which Galveston County agreed to indemnify the private railway companies from liability arising from use of the drawbridge in connection with travel over the county road. *Id.* In 1936, an assignee of one of the private railway companies settled a suit for injuries alleged to have been caused by the assignee's negligent operation of the drawbridge and then filed suit against the county for indemnification under the contract. *Id.* at 714-15. The court held that the clause was void under article XI, section 7, reasoning as follows:

> The Supreme Court has said that the word debt, as used in the Constitution, means any pecuniary obligation imposed by contract, except such as was, at the time of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the county. In other words, if the obligation does not arise as an item of ordinary expenditure in the daily functioning of the county government or if it is not to be paid out of funds then in the county treasury legally applicable thereto, it is a debt and falls under the condemnation of the Constitution, unless the required provision for its payment is made at the time the obligation is incurred.

*Id.* at 715 (citing *McNeill v. City of Waco*, 33 S.W. 322 (Tex. 1895) and *Stevenson v. Blake*, 113 S.W.2d 525 (Tex. 1938)). This case suggests that a hold and save harmless provision creates an unascertainable obligation that, by its very nature, cannot be satisfied out of current revenues and is therefore impermissible.

More recently, in *Brown v. Jefferson County*, 406 S.W.2d 185 (Tex. 1966), the Texas Supreme Court addressed an agreement between the United States and Jefferson County regarding replacement of a bridge in the county. *Id.* at 186. The United States agreed to pay three-fourths of the cost of the bridge, *id.* at 188, and, it appears, to construct the bridge. Upon completion, the county would assume all obligations of ownership, operation, and maintenance of the new bridge. *Id.* Jefferson County agreed to hold and save the United States free from damages resulting from construction of the project. *Id.* at 186-87. The agreement and a commissioners court resolution also provided for levying and collecting a tax to pay interest upon and creating a sinking fund for the retirement of any debt arising from the hold and save harmless provision. *Id.* at 187. The court concluded that the agreement and resolution did not run afoul of article XI, section 7, stating:

> The Galveston case is to be restricted to its essential holdings, namely, that an indemnity agreement is a "debt" within the constitutional sense, and that, as a corollary thereto, provision must be made for the payment of any interest that may accrue thereon and for the retirement of the obligation. This was

done in the Jefferson County resolution. . . . The [Galveston County] opinion should not, however, be construed . . . as condemning any and all indemnity contracts which a county might enter into in carrying out its legitimate functions.

*Id.* at 188. *Brown v. Jefferson County* holds that hold and save harmless provisions are debts for purposes of article XI, section 7, but are permissible if the requisite steps are taken to satisfy any resulting obligation.

It is clear from these cases that a county's agreement to indemnify a third party for damages arising from acts of the third party creates a debt within the meaning of article XI, section 7. The Galveston County case involved a suit by a private railway company seeking to recover damages the company had paid to settle suit based on the company's alleged negligence in operating the drawbridge.[7] The agreement at issue in the Jefferson County case clearly obligated the county to indemnify the United States for damages arising from the federal government's construction of the bridge.[8] Therefore, the proposed corps contract, to the extent it obligates the county to indemnify the corps for damages arising from acts of the corps, creates a debt within the meaning of article XI, section 7.

It is less clear whether the proposed corps contract creates a debt within the meaning of article XI, section 7 to the extent it merely obligates the county to assume liability for acts of its own personnel. We have not found any case squarely addressing whether article XI, section 7 debt is created by a hold and save harmless provision that obligates a county to indemnity a third party only for damages arising from county acts and does not expand the county's liability beyond its liability under existing law. First, it is not clear whether the hold and save harmless provisions in *Texas & New Orleans Railroad* and *Brown v. Jefferson County* obligated the counties to hold parties to the contracts harmless for damages arising from county acts. The contractual provisions at issue may have obligated the counties to indemnify third parties for damages arising from acts of the counties as well as others. The Galveston County contract, for example, purported to make the employees operating the drawbridge joint employees of the both the private companies and the county.[9] In the Jefferson County case, the county was to help finance construction of the bridge and was, perhaps, to have some role in designing and constructing the roadway over the bridge.[10] Neither case, however, distinguishes between indemnification for damages arising from county acts and indemnification for damages arising from the acts of others.

---

[7]*See Texas & New Orleans R.R.*, 169 S.W.2d at 714.

[8]*See Brown v. Jefferson County*, 406 S.W.2d at 187.

[9]*See Texas & New Orleans R.R.*, 169 S.W.2d at 714.

[10]*See All Persons Interested v. Jefferson County*, 397 S.W.2d 241, 248-49, 250 (Tex. Civ. App.--Beaumont 1965), *aff'd, Brown v. Jefferson County*, 406 S.W.2d 185.

Moreover, even if *Texas & New Orleans Railroad* and *Brown v. Jefferson County* could be construed to address counties' agreement to indemnify others for damages arising from county acts, both cases predate the 1969 enactment of the Texas Tort Claims Act,[11] which has significantly altered county tort liability. Until the enactment of the Texas Tort Claims Act, counties were generally immune from suit in negligence actions.[12] Prior to 1969, any attempt to create county liability for county negligence by contract was an attempt to create a liability that did not otherwise exist. Now, however, county immunity to suit has been waived, at least to some extent, by the Texas Tort Claims Act.[13]

Given the sea change in the county tort liability since the Texas Supreme Court last examined these issues, this office cannot predict whether a court would conclude that the fact that a release applies only to damages arising from the negligence of the county saves the provision from creating a debt within the meaning of article XI, section 7. On the one hand, courts have held that the Texas Tort Claims Act does not create a "debt" within the meaning of article XI, section 7.[14] In addition, the Texas Tort Claims Act has been construed to permit a third-party plaintiff to implead a governmental entity as a third-party defendant for a claim of contribution or indemnity.[15] Thus, a court might conclude that such a release merely restates the county's liability under existing law[16] and therefore does not create a debt within the meaning of article XI, section 7.

On the other hand, Texas courts have construed the term "debt" in article XI, section 7 and its counterpart applicable to cities, article XI, section 5, broadly. Again, it is commonly understood that "the word debt, as used in the Constitution, means *any pecuniary obligation imposed by contract*, except such as was, at the time of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of current revenues." *Texas & New Orleans R.R.*, 169 S.W.2d at 715 (emphasis added and citations omitted). Tort liability and contractual liability are not necessarily the same. Your query provides an example of one of the many possible and

---

[11]*See* Act of May 14, 1969, 61st Leg., R.S., ch. 292, Tex. Gen. Laws 874, 874.

[12]*See generally Harris County Flood Control Dist. v. Mihelich*, 525 S.W.2d 506, 508 (Tex. 1975); *Harris County v. Dowlearn*, 489 S.W.2d 140 (Tex. App.--Houston [14th Dist.] 1973, writ ref'd n.r.e.).

[13]"At common law governmental immunity from tort was absolute. [The Texas Tort Claims Act] merely set aside governmental immunity in limited areas and up to a limited dollar amount." *City of Hearne v. Williams*, 715 S.W.2d 375, 377 (Tex. App.--Waco 1986, writ ref'd n.r.e.).

[14]*Harris County v. Dowlearn*, 489 S.W.2d at 145; *City of Dallas v. Miller*, 27 S.W. 498, 500 (Tex Civ. App. 1894, no writ).

[15]*See City of Denton v. Mathes*, 528 S.W.2d 625, 632 (Tex. Civ. App.--Fort Worth 1975, writ ref'd n.r.e.); *see also Keiffer v. Southern Pac. Transp. Co.*, 486 F. Supp. 798, 800 (E.D. Tex. 1980); *Flores v. Norton & Ramsey Lines, Inc.*, 352 F. Supp. 150 (W.D. Tex. 1972).

[16]In 1982, for example, this office opined that to the extent a contractual release merely reinforces a state university's existing legal obligations and does not expand or increase the university's liability "it is harmless surplusage." Attorney General Opinion MW-475 (1982) at 1. Attorney General Opinion MW-475 did not address article XI, section 7, and it is not dispositive here.

perhaps significant differences: Whereas the county would be sued for negligence under the Texas Tort Claims Act, a state law, contract claims arising under or relating to the proposed contract would be subject to federal law, the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613.[17] Although courts have recognized that article XI, section 7 "debt" does not embrace an obligation arising from tort, a court might conclude that a release that transforms existing tort liability into a contractual liability creates a "pecuniary obligation imposed by contract" and therefore creates a debt for purposes of article XI, section 7.

In sum, we believe a court would conclude that the hold and save harmless provision creates a debt for purposes of article XI, section 7 to the extent the provision obligates the county to indemnify the corps for damages arising from acts of the corps. Whether article XI, section 7 debt is created by a hold and save harmless provision that requires a county to indemnify a third party only for damages arising from acts of the county and that does not expand the county's liability beyond its liability under existing law is a question of first impression that we do not resolve. Therefore, if, as the corps contends, the hold and save harmless provision requires the county to indemnify the corps only for damages arising from acts of the county and does not expand the county's liability beyond its liability under existing law, we cannot definitively determine whether the provision creates a debt within the meaning of article XI, section 7.

Finally, we note that a county is not precluded from entering into an agreement creating a debt if certain steps are taken. The requirements of article XI, section 7 are satisfied by a commissioners court order or resolution, adopted at the time the commissioners court creates the debt, providing for the levy and collection of taxes sufficient to pay the interest and create a sinking fund for the debt. Until some liability ascertainable in amount arises, no money need be collected. *See generally Brown v. Jefferson County*, 406 S.W.2d at 188-90.[18]

---

[17]*See* Proposed Cooperative Agreement, *supra* p. 2, art. 5.

[18]Article XI, section 7 limits the authority of a county to incur debt; it does not affirmatively authorize counties to levy taxes for any purpose. *See Mitchell County v. City Nat'l Bank*, 43 S.W. 880, 883 (Tex. 1898) (Tex. Const. art. XI, § 7 "contains no grant of authority to levy a tax"). Therefore, before providing for a levy and sinking fund in order to comply with article XI, section 7, a county should first verify that it is authorized to levy the tax.

## S U M M A R Y

A hold and save harmless provision that obligates a county to indemnify a third party for damages arising from the acts of the third party creates a debt within the meaning of article XI, section 7 and is therefore an obligation that the county may not undertake without taking certain steps. Whether article XI, section 7 debt is created by a hold and save harmless provision that requires a county to indemnify a third party only for damages arising from county acts and does not expand the county's liability beyond its liability under existing law appears to be a question of first impression that has not been addressed by the courts.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General